No. 93-350

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

IN RE THE MARRIAGE OF

JUDITH A. BONAMARTE,

      Petitioner and Respondent,

  -v-

MARK J. BONAMARTE,

      Respondent and Appellant.


APPEAL FROM:   District Court of the Eighteenth Judicial District,
                In and for the County of Gallatin,
                The Honorable Thomas A. Olson, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

      Donald E. White, Bozeman, Montana

      For Respondent:

      Marcelle C. Quist, Quist Law Office, Bozeman,
      Montana

FILED

JAN - 4 1994

Filed:

CLE... .. SUPREME COURT
STATE OF MONTANA

Clerk

Submitted on Briefs:  November 5, 1993

Decided:  January 4, 1994

Justice James C. Nelson delivered the Opinion of the Court.

This is an appeal from an Eighteenth Judicial District Court, Gallatin County, decision in a dissolution action. We reverse and remand for a new trial.

The dispositive issue on appeal is whether the petitioner was properly allowed to testify by telephone, over the objection of the respondent, at the hearing on the merits.

The petitioner, Judith Spillane (f/k/a Judith Bonamarte - Judith) and the respondent, Mark Bonamarte, (Mark) were married on April 29, 1990, in New Jersey but separated in June of 1991 when Judith obtained a temporary restraining order alleging physical and emotional abuse and threats of violence by Mark. Judith filed a petition for dissolution in July of 1991, and moved to New Jersey the following month, at which time she was six months pregnant.

There is one child of the marriage, Quentin Christopher Spillane (Quentin), born on November 18, 1991. Quentin has resided with his mother in New Jersey at all times. Mark continues to reside in Montana. The parties have agreed that Mark can exercise supervised visitation with Quentin in the state of New Jersey.

This dissolution action came before the Eighteenth Judicial District Court on February 4, 1993, but a portion of the trial was postponed until February 19, 1993, when the trial court decided that Judith could testify from New Jersey via the telephone. The telephonic testimony occurred on February 19 over Mark's objection. On March 22, 1993, the trial court issued its decision awarding sole custody of Quentin to Judith and ordering Mark to pay $310.59

2

per month for child support, plus arrearages. The court also concluded that Mark could not require that Quentin use his last name, Bonamarte, instead of Judith's last name, Spillane.

Judith continues to fear Mark and for this reason, as well as the expense of traveling and her inability to find adequate child care for Quentin if she traveled to Montana, she made the request to testify by telephone at the hearing on the merits. It is upon the issue of the District Court's allowing her telephonic testimony that the disposition of this case rests.

Our standard of review relating to discretionary court rulings is whether the court abused its discretion. Steer Inc. v. Department of Revenue (1990), 245 Mont. 470, 475, 803 P.2d 601, 604.

Mark states that the hearing was originally scheduled for February 4, 1993, but when Judith did not appear, the court continued the matter until February 19, 1993, when it allowed Judith to testify by telephone from New Jersey over Mark's objection. He argues that Judith was not placed under oath by a person authorized to administer oaths but that she was merely introduced by someone who claimed to be Judith's supervisor and stated that she knew Judith. At that time, the Court administered the oath and Judith testified. Mark also reminds this Court that it was Judith who chose Montana as the forum for the dissolution.

Mark also argues that Judith was unable to testify as to matters that required documentary evidence to be considered by the court involving the parties' income, assets and debts. He states

3

that his counsel's cross-examination of Judith concerning the parties' accounts was difficult because the documents being discussed were not available for her perusal in New Jersey. He states that he could not fully cross-examine Judith because the testimony was by telephone.

Finally, Mark argues that "(Rule 611(e)), [M.R.Evid.], make[s] it absolutely clear that a party in all court proceedings (civil included) has a right to confrontation of witnesses and that a witness can only be heard in the presence of the Court and parties." He concludes that "unless other arrangements had been previously made (such as a prior deposition) there was without question, a clear violation of the rule. The only remedy at this time would be to return the case for a new trial."

Judith counters that she was afraid of Mark because of past domestic abuse and therefore did not want to return to Montana to testify. Also, she contends that she could not afford the expense of traveling to Montana nor could she find child care for her son and that for these reasons, she wished to testify by telephone from New Jersey, her current home.

Judith asserts that she did testify in the "presence" of her husband and that she was subject to examination by all parties to the action. Further, Mark did not dispute that it was Judith who testified over the telephone. Moreover, Rule 611(e) allows for exceptions to the rule, this case falls within those exceptions and the court has discretion to decide whether to permit telephonic testimony. Finally, Judith maintains that if the decision to allow

4

telephonic testimony is error, it is harmless error because it did not affect the husband's substantial rights.

Factually, this is a difficult case. It is hard to fault the District Judge who was obviously trying to make the best of a difficult situation and to accommodate Judith's concerns and the logistical and financial problems associated with her personal appearance at trial. Given the law, however, we must, nevertheless, conclude that the trial court abused its discretion when it allowed Judith to testify by telephone over objection in lieu of personally appearing in court at the hearing on the merits. This error denied Mark a meaningful opportunity to confront the witness, Judith, and to conduct a proper cross-examination. This is more than harmless error and warrants reversal and remand for a new trial.

## Discussion

Requiring a witness to testify personally at trial serves a number of important policies and purposes. A witness' personal appearance in court:

1.  assists the trier of fact in evaluating the witness' credibility by allowing his or her demeanor to be observed firsthand;
2.  helps establish the identity of the witness;
3.  impresses upon the witness, the seriousness of the occasion;
4.  assures that the witness is not being coached or influenced during testimony;
5.  assures that the witness is not referring to documents improperly; and
6.  in cases where required, provides for the right of confrontation of witnesses.

See Weber, Permissibility of Testimony by Telephone in State Trial, 85 ALR4th 476, 481. We agree that these are sound considerations

5

for requiring, except under specific circumstances within the parameters of our procedural rules and applicable statutes, that witnesses testify in person at trial.

In particular, we note that the right of confrontation long provided in all criminal cases, is also required in civil cases in Montana under Rule 611(e) M.R.Evid. Rule 611, M.R.Evid., is primarily based on the similar federal rule of evidence. However, Montana's subsection (e), is original and provides:

> Confrontation. Except as otherwise provided by constitution, statute, these rules, or other rules applicable to the courts of this state, at the trial of an action, a witness can be heard only in the presence and subject to the examination of all the parties to the action, if they choose to attend and examine.

Rule 611(e), M.R.Evid. The importance in Montana of the requirement that a witness testify at trial in the presence of all parties is evidenced by the inclusion of subsection (e) in our adoption of Rule 611, M.R.Evid. The reasoning behind Montana's addition of subsection (e) is illustrated in Coy v. Iowa (1988), 487 U.S. 1012, 1019-1020, 108 S.Ct. 2798, 101 L.Ed.2d 857. (Citations omitted.)

> The perception that confrontation is essential to fairness has persisted over the centuries because there is much truth to it. A witness "may feel quite differently when he has to repeat his story looking at the man whom he will harm greatly by distorting or mistaking the facts. He can now understand what sort of human being that man is." It is always more difficult to tell a lie about a person "to his face" than "behind his back." In the former context, even if the lie is told, it will often be told less convincingly. The Confrontation Clause does not, of course, compel the witness to fix his eyes upon the defendant; he may studiously look elsewhere, but the trier of fact will draw its own conclusions. Thus the right to face-to-face

6

confrontation serves much the same purpose as a less explicit component of the Confrontation Clause that we have had more frequent occasion to discuss-the right to cross-examine the accuser; both "ensur[e]the integrity of the factfinding process."

Although Coy is a criminal case and applies to a constitutional protection, the principles behind the right to confront witnesses are applicable to civil cases in Montana, as well, and that right is guaranteed in Rule 611 (e), M.R.Evid. The integrity of the factfinding process at trial is undermined where the parties do not have the opportunity to confront each other or the witnesses, where the finder of fact does not have the opportunity to observe the parties and the witnesses and where the opposing party cannot effectively cross-examine the other party or the witnesses.

If the phrase "a witness can be heard only in the presence and subject to the examination of all the parties..." is to have any meaning, then, in the absence of a specific rule or statutory exception to the contrary, the witness must be physically present in the courtroom to testify personally at trial unless all parties and the court agree to a different method of examination which protects the parties' rights of confrontation and cross-examination and, at the same time, allows the fact finder to assess the witness' credibility, testimony and the evidence presented.

Here, it was impossible for the court to make a determination as to the relative credibility of the party-witnesses because it did not have an opportunity to observe the testimony of both Mark and Judith. The parties in a dissolution action often deliver

conflicting evidence, and it is the court's role to determine who is the more credible witness. This can be accomplished most effectively by observing each party's demeanor during testimony.

Judith's reasons for testifying over the telephone included fear of Mark, cost of travel and inability to obtain adequate child care for her son while she traveled to Montana for the hearing. Although we recognize that Judith had legitimate concerns about returning to Montana, these concerns do not outweigh the necessity for the trial court to determine credibility. In this instance, the court could not evaluate the demeanor of the witness nor could it determine whether she was being coached or was improperly referring to documents.

Moreover, it was difficult for Mark's counsel to effectively cross-examine Judith about the couple's financial records because Judith did not have those records or copies of those records to which she could refer and provide pertinent testimony. We cannot say that this was a fair trial on the merits when one side was so obviously handicapped and was unable to effectively confront and cross-examine the adverse party.

Furthermore, alternative solutions to Judith's problems and concerns were available under Section V., Depositions and Discovery, M.R.Civ.P., and one or more of those alternatives could have been pursued instead of simply allowing her telephonic testimony over objection. As Mark's counsel stated during the hearing, "this case has been pending for a long time already. She was not going to be here, that's fine, but we could have done this

by deposition a long time ago. As recently as this week, I allowed Mr. Bonamarte to be deposed. That could have been done is [sic] she wasn't going to be here."

In this case, for example, it would have been possible to present Judith's testimony at trial by videotaped deposition. See, Rule 30(h), M.R.Civ.P. This was done quite effectively in Ferrante by Ferrante v. Ferrante (N.Y. Sup. 1985), 485 N.Y.S.2d 960. The procedure utilized there is described as follows:

> Plaintiff's counsel was advised in advance of the date and time of the telephone conference call. He was instructed to have present at plaintiff's nursing home at the time of the conference call, a notary to administer the oath to the witnesses and a videotape operator to record the witnesses' testimony. He was also instructed to provide the plaintiff with exact legible copies of all exhibits to be introduced. The purpose of this was to insure that plaintiff, after identifying each exhibit, could hold it up to the camera to be videotaped, thus permitting the court when reviewing the tape, to ensure that the marked exhibits and the copies in plaintiff's possession were the same.

Ferrante, 485 N.Y.S.2d at 962.

The plaintiff/witness in that case was a 92 year old woman who was in poor physical condition and was permanently confined to a nursing home in Florida. The court, in solving the dilemma posed by the necessity of taking the plaintiff's testimony without her presence in court while still protecting the rights of the defendant, stressed the importance of the videotaped record of the testimony. It particularly noted that the plaintiff was provided with copies of each exhibit and she was able to examine them before they were admitted into evidence. Each page of the copy of each exhibit was also videotaped to insure that the proper documents

9

were being used and admitted.

While, within the parameters established in our procedural rules and applicable statutes, the court and counsel are free to agree upon and to utilize different methods of presenting the testimony of and cross-examining a party or witness unable to appear personally at trial to testify, the above-described method at least ensures that the witness' identity can be established, assures that the witness is not being coached, assures that the witness is not improperly referring to documents (85 ALR4th at 481), and assures that any marked exhibits and copies of the exhibits being referred to and offered are the same. (Ferrante, 485 N.Y.S.2d at 962.) In addition, that method provides the court with a visual record of the witness' testimony and allows the fact finder the opportunity to draw conclusions about demeanor and credibility. Ferrante, 485 N.Y.S.2d at 962.

Finally, we do not here adopt a per se rule that would preclude the use of telephonic testimony at trial in all cases or circumstances. Where the trial court approves and all parties consent, or at least have sufficient notice to object and/or make alternative arrangements, we see no reason why telephonic testimony cannot be utilized in appropriate situations where special or exigent circumstances dictate the necessity for that type of testimony, where rights of confrontation and cross-examination are not substantially compromised or are otherwise adequately preserved, where the identity and credibility of a witness are not critical and where there is no need to use documentary or tangible

10

exhibits in examining the witness. "Generally, special circumstances such as exigency, consent and knowledge of the witness' identity and credentials, have dictated the admissibility of telephonic testimony....In the absence of exigency or consent, telephonic testimony generally has <u>not</u> been allowed." Byrd v. Nix (Miss. 1989), 548 So.2d 1317, 1319-1320. (Citations omitted.) (Emphasis added.) See also; Aqua Marine Prod. v. Pathe Computer (N.J. 1988), 551 A.2d 195, 200.

None of those circumstances are present in the instant case. Although we sympathize with Judith's position and the District Court's attempt to accommodate her situation and concerns, in this case allowing her to testify by telephone at the hearing on the merits over the objection of the adverse party was not an acceptable substitute for her personal appearance in court, particularly given the significance placed upon the right to confront witnesses in civil trials in Montana as set forth in Rule 611(e), M.R.Evid. "The opportunity to observe a witness is so critical to judicial control and effective cross-examination that its denial is manifestly prejudicial." State ex rel. Juv. Dept. v. Gates (Or. 1987), 740 P.2d 217, 218.

We hold that the District Court abused its discretion in allowing Judith to testify by telephone over objection at the hearing on the merits. We reverse and remand for a new trial in order to allow Mark a meaningful opportunity to "confront" the witness and to effectively cross-examine and in order to afford the opportunity for the trial court to observe the witness and make its

11

determination as to her credibility.

In view of our holding here and the necessity for a new trial, we decline to rule on the other issues raised by the parties involving child support, custody and the District Court's decision to allow Quentin to retain Judith's surname.

Reversed and remanded for further proceedings consistent with this opinion.

_____
                                        Justice

We Concur:

_____

_____

_____

_____
            Justices

12