No. 96-270

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


IN RE THE MATTER
OF:

B.C., B.P., M.P. and T.
P.,

Youths in Need of Care,



APPEAL FROM:     District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Thomas M. McKittrick, Judge presiding.



COUNSEL OF RECORD:

For Appellant:

Nathan J. Hoines, Great Falls, Montana; Bethany Schendel, Great
Falls,
Montana (youths)

For Respondent:

Joseph P. Mazurek, Attorney General, Micheal W. Wellenstein,
Assistant
Attorney General, Helena, Montana; Brant S. Light, Cascade
County
Attorney, Great Falls, Montana



Submitted on Briefs: January 16, 1997

Decided:   July 2, 1997
Filed:

_____
Clerk


Justice James C. Nelson delivered the Opinion of the Court.


Toni C. (Toni), the natural mother of B.C., B.P., M.P., and T.P, appeals the decision of the District Court for the Eighth Judicial District, Cascade County, terminating her parental rights to all four children.  Kevin P. (Kevin), the natural father of B.P., M.P., and T.P., appeals the decision of the District Court terminating his parental rights to his three children.  We affirm.

We address the following issues on appeal:

1.  Did the District Court err in refusing to allow Toni and Kevin to testify by telephone?

2.  Did the District Court err in terminating the parental rights of Toni and Kevin?

Factual and Procedural Background

In January 1994, Toni and Kevin were arrested in Washington state.  As a result, Washington Social Services removed B.C., B.P., M.P. and T.P. from the home and placed them in emergency foster care.  In February 1994, Washington Social Services requested that Toni's mother, Joyce, pick up the children and bring them to Montana to live with her. Washington Social Services directed Joyce to notify the Montana Department of Family Services (DFS), now the Department of Public Health and Human Services, that the children were now in her care.

On March 8, 1994, DFS filed a petition for temporary legal custody of the children.  The District Court subsequently adjudicated B.C., born March 25, 1983, B.P., born August 4, 1985, M.P., born February 8, 1988, and T.P., born January 29, 1990, as "youths in need of care" and awarded temporary legal custody of the youths to DFS for six months or until such time as the court could review the matter.  The court ordered Toni and Kevin to complete court-approved treatment plans before they would be reunited with their children.

Toni was unaware of the provisions of the treatment plan until October 1994, because DFS had difficulty locating her whereabouts.  When Toni finally contacted her mother in September 1994, DFS was able to obtain her current address and send her a copy of the treatment plan.

On January 20, 1995, DFS petitioned the District Court for permanent legal custody of the children and termination of the parental rights of Toni and Kevin.  The District Court scheduled a hearing on the petition for March 16, 1995.  Because DFS was again unable to contact Toni and Kevin and because of a conflict in the court's calendar, the hearing was rescheduled for April 26, 1995.  The court appointed counsel for Toni and Kevin on April 3, 1995.  Counsel subsequently requested two additional continuations

which the District Court granted.

At the hearing conducted on June 20, 1995, a DFS social worker testified that Toni and Kevin had not complied with the treatment plan. Toni, who was now living in Oregon, was allowed to testify by telephone. She testified that if she were granted more time she would try to complete the treatment plan. On July 25, 1995, the parties stipulated that Toni and Kevin would be allowed an additional four months to complete their respective treatment plans.

On October 30, 1995, the day before the next scheduled hearing, Toni's and Kevin's counsel filed a motion to continue the hearing. The reasons counsel cited for this continuance included the fact that Toni and Kevin could not afford to travel to Montana since Kevin had only recently been released from prison, having been incarcerated since January 1, 1995. The District Court granted the motion and rescheduled the hearing for November 28, 1995. On November 18, 1995, Kevin and Toni were each personally served with a citation ordering them to appear at the hearing and to show cause why the relief set forth in DFS' petition for permanent custody should not be granted.

On the appointed day, Toni and Kevin notified their attorney that they would be unable to attend the hearing. Thus, at the start of the hearing, counsel requested a continuance until June at which time Toni and Kevin believed they would be able to travel. Citing the fact that there had already been continuances and that the children needed some measure of permanence in their lives, the District Court denied the motion concluding that a continuance until June was too long.

At the conclusion of the State's case, Toni's and Kevin's counsel requested that they be allowed to testify over the telephone. The State objected to the request and argued that it was important for the court to see Toni and Kevin in person in order to determine their credibility. The District Court, questioning the timeliness of the request, deemed it unreasonable and denied the motion.

The District Court issued an Order on December 29, 1995, wherein the court terminated Toni's parental rights as to B.C., B.P., M.P., and T.P. and Kevin's parental rights as to B.P., M.P., and T.P. Judgment was entered on March 18, 1996. Toni and Kevin appeal.

Standard of Review

In cases involving the termination of parental rights, this Court will affirm a district court's factual findings unless those findings are clearly erroneous. Matter of R.B.O. (1996), 277 Mont. 272, 277, 921 P.2d 268, 271 (citing Matter of D.H. (1994), 264 Mont. 521, 524-25, 872 P.2d 803, 805). A finding is clearly erroneous if it is

not
supported by substantial evidence; or, if so supported, the district court misapprehended
the effect of the evidence; or, if so supported and the district court did not misapprehend
the effect of the evidence, this Court is left with the definite and firm conviction that a
mistake has been committed. R.B.O., 921 P.2d at 271. With the exception of a district
court's conclusions involving the exercise of discretion, such as a determination that a
child is abused or neglected, we review a district court's conclusions of law to determine
whether they are correct. R.B.O., 921 P.2d at 271.

Issue 1.

Did the District Court err in refusing to allow Toni and Kevin to testify

by telephone?

At the November 28, 1995 hearing, at the conclusion of the State's case, Toni's
and Kevin's attorney requested that they be allowed to testify by telephone. The State
objected relying upon Rule 611(e), M.R.Evid., and this Court's holding in Bonamarte v.
Bonamarte (1994), 263 Mont. 170, 866 P.2d 1132. The State argued that it was
important for the court to see Toni and Kevin in person in order to determine their
credibility. The District Court denied the motion based upon the objections raised by the
State and because the motion was untimely.

Toni and Kevin contend on appeal that since Toni was allowed to testify by
telephone at the June 20, 1995 hearing, she should have been allowed to testify by
telephone at the November 28, 1995 hearing. In addition, they contend that there were
special and exigent circumstances in their case, as outlined in Bonamarte, that would
allow telephonic testimony. In Bonamarte, the wife in a dissolution action was
allowed to testify by telephone over the objections of the husband. We noted in that case
that the right of confrontation required in all criminal cases in Montana is also required
in all civil cases under Rule 611(e), M.R.Evid., and we held that allowing the wife to
testify by telephone constituted reversible error. Rule 611(e), M.R.Evid., provides:

Confrontation. Except as otherwise provided by constitution, statute,
these rules, or other rules applicable to the courts of this state, at the trial
of an action, a witness can be heard only in the presence and subject to the
examination of all the parties to the action, if they choose to attend and
examine.

We stated in Bonamarte that requiring a witness to testify personally at trial serves

a number of important policies and purposes. These policies and purposes include: assisting the trier of fact to evaluate the witness' credibility by allowing his or her demeanor to be observed firsthand; helping to establish the identity of the witness; impressing upon the witness the seriousness of the occasion; assuring that the witness is not being coached or influenced during testimony; assuring that the witness is not referring to documents improperly; and, in cases where required, providing for the right of confrontation of witnesses. Bonamarte, 866 P.2d at 1134. We concluded that:

The integrity of the factfinding process at trial is undermined where the parties do not have the opportunity to confront each other or the witnesses, where the finder of fact does not have the opportunity to observe the parties and the witnesses and where the opposing party cannot effectively cross-examine the other party or the witnesses.

Bonamarte, 866 P.2d at 1135.

Nonetheless, we did not adopt a per se rule in Bonamarte that would preclude the use of telephonic testimony at trial in all cases or circumstances. Instead, we stated that

Where the trial court approves and all parties consent, or at least have sufficient notice to object and/or make alternative arrangements, we see no reason why telephonic testimony cannot be utilized in appropriate situations where special or exigent circumstances dictate the necessity for that type of testimony, where rights of confrontation and cross-examination are not substantially compromised or are otherwise adequately preserved, where the identity and credibility of a witness are not critical and where there is no need to use documentary or tangible exhibits in examining the witness.

Bonamarte, 866 P.2d at 1136. However, the circumstances set forth in Bonamarte, which would allow telephonic testimony are not present in the case before us on appeal; all parties did not consent, there was not sufficient notice to make alternative arrangements and this was not a situation where special or exigent circumstances dictated the necessity for this type of testimony.

The reasons the wife in Bonamarte gave for not being able to testify in person included fear of her husband, the cost of traveling from New Jersey to Montana, and the inability to obtain adequate child care for her son while she traveled to Montana for the hearing. We concluded that none of these reasons constituted special or exigent circumstances necessitating telephonic testimony and we held that the District Court abused its discretion in allowing the wife to testify by telephone over objection. Bonamarte, 866 P.2d at 1137. As was the case in Bonamarte, financial inability of Toni and Kevin to travel to Montana for the hearing does not constitute special or exigent circumstances.

Moreover, the credibility of Toni and Kevin as to their compliance with and completion of the treatment plan was critical to the disposition of their parental rights.

It was necessary for the court to observe their demeanor while testifying in order to determine whether the conduct rendering them unfit was likely to change within a reasonable time. Hence, this was not a case where telephonic testimony would have been proper.

Furthermore, Toni's and Kevin's motion to testify by telephone was not made until after the conclusion of the State's case.  The District Court, stating that other arrangements could have been made if their had been sufficient notice, deemed the motion untimely and unreasonable.  We find no abuse of discretion with the District Court's ruling.

Accordingly, we hold that the District Court did not err when it refused to allow Toni and Kevin to testify by telephone.

Issue 2.

Did the District Court err in terminating the parental rights of Toni and Kevin?

We have previously stated that because the termination of parental rights involves fundamental liberty interests, the party seeking termination must present clear and convincing evidence that the prerequisite statutory criteria for termination have been met. Matter of J.L. (1996), 277 Mont. 284, 288, 922  P.2d 459, 461 (citing  Matter of Custody and Parental Rights of M.M. (1995), 271 Mont. 52, 56, 894 P.2d 298, 301; Matter of J.R. (1992), 253 Mont. 434, 438, 833 P.2d 1063, 1066).  Section 41-3-609, MCA, sets forth the criteria for termination:

(1) The court may order a termination of the parent-child legal relationship upon a finding that any of the following circumstances exist: . . .

(c) the child is an adjudicated youth in need of care and both of the following exist:

(i) an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful; and

(ii) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time; . . .

Section 41-3-609(1)(c), MCA.  This section further provides:

(2) In determining whether the conduct or condition of the parents is unlikely to change within a reasonable time, the court must enter a finding that continuation of the parent-child legal relationship will likely result in continued abuse or neglect or that the conduct or the condition of the parents renders the parents unfit, unable, or unwilling to give the child adequate parental care. In making the determinations, the court shall consider but is not limited to the following: . . .

(d) excessive use of intoxicating liquor or of a narcotic or dangerous drug that affects the parent's ability to care and provide for the child; . . .

(g) any reasonable efforts by protective service agencies that have

been unable to rehabilitate the parent.

Section 41-3-609(2), MCA.

Moreover, when considering any of the factors in 41-3-609(2), MCA, in terminating the parent-child relationship, the court must give primary consideration to the best interests of the child as demonstrated by the child's physical, mental, and emotional conditions and needs. Section 41-3-609(3), MCA; J.L., 922 P.2d at 461.

B.C., B.P., M.P., and T.P. were adjudicated "youths in need of care" by the District Court on April 18, 1994, and court-approved treatment plans for both parents were established. These treatment plans were to be completed by the parents within six months, however, they did not become effective until October 1994, because DFS was unable to contact the parents to inform them of the plans' requirements until September 1994. At the November 28, 1995 hearing, more than one year after the treatment plans became effective, the District Court determined that neither Toni nor Kevin had successfully completed their treatment plans, and that they were unlikely to complete the plans within a reasonable time.

Toni and Kevin do not contend on appeal that they successfully completed their court-approved treatment plans, but rather that the District Court erred in stating that they had not successfully completed even one component of their treatment plans. However, partial compliance with a treatment plan is insufficient to preclude termination of parental rights. Matter of J.J.C.H. (1992), 252 Mont. 158, 164, 827 P.2d 812, 816 (citing Matter of H.R.B. (1989), 239 Mont. 387, 389, 780 P.2d 1139, 1140).

The treatment plans provided that both Toni and Kevin were to maintain weekly contact with the social worker throughout a six-month time frame, however, neither parent complied with this provision. Toni and Kevin argue that Kevin could not comply because he was incarcerated from January 1, 1995 until October 3, 1995. However, this does not explain his non-compliance from October 1994 through December 1994, nor does it explain Toni's non-compliance. Moreover, as the State points out, Kevin's incarceration should not excuse him from complying because it was his criminal conduct that required his incarceration and he could have maintained weekly contact through letters to the social worker. In addition, neither Toni nor Kevin obtained a parenting assessment and evaluation as required by the treatment plans.

The treatment plans also required that Toni and Kevin, because of their known alcohol and drug abuse, obtain evaluations for drug and alcohol dependency and submit to random drug and alcohol urinalysis. Kevin did not obtain an evaluation because of his incarceration and, while Toni eventually complied with these provisions, she did not send a copy of the evaluation to DFS, thus DFS did not know the results of the evaluation or

its recommendations. In addition, Toni tested positive for cocaine use three times since the June 20, 1995 hearing. Her last positive urinalysis was on August 28, 1995, only three months prior to the November 28, 1995 hearing.

Under the treatment plans, Toni and Kevin were required to report immediately to their social worker any contact they had with law enforcement, regardless of the reason for the contact. They were also required to obtain a written report from law enforcement detailing the type of contact. Kevin failed to report to the social worker regarding his incarceration and he failed to obtain a written report detailing this contact with law enforcement. Additionally, Toni did not report the 14 days she spent in jail as a result of her testing positive for drugs.

Because Toni, Kevin and the children lived in a van and at various motels for the three years prior to the children being sent to their grandmother in Montana, the treatment plans required that Toni and Kevin maintain a residence adequate to house all four of the children for a period of six months before the children would be returned to their care. At the time of the June 20, 1995 hearing, Toni testified that she was living in a one-bedroom apartment and had been living there since January 7, 1995. She admitted that the apartment was not suitable for her children, but she testified that she was saving money to get an apartment or house suitable for all four children. At the November 28, 1995 hearing, the DFS social worker testified that Toni and Kevin were living in a one-bedroom apartment and had been living there for only six weeks. The apartment was not large enough to accommodate the four children.

Due to the inability of Toni and Kevin to obtain suitable housing for the children after more than one year and because of Toni's recent drug use, it was not unreasonable for the District Court to conclude that the conduct or condition rendering Toni and Kevin unfit was unlikely to change within a reasonable time. Moreover, the DFS social worker testified that it would be in the best interests of the children to terminate the parental rights of Toni and Kevin. When DFS initially became involved in this case, the children had been neglected as to medical and dental treatment and they had not been attending school. In addition, Toni and Kevin were teaching the children to shoplift. The social worker testified that the children needed permanence in their lives. Neither Toni nor Kevin have made any attempt to return to Montana to work on regaining custody of the children, nor have they ever returned to Montana to visit the children. Furthermore, Toni never bothered to contact her mother to check on the welfare of the children

for the
first nine months after the children were placed in their grandmother's care.
Therefore, we conclude that there is substantial evidence in the record supporting
the District Court's finding that Toni and Kevin failed to successfully complete the court-
approved treatment plan, thus the prerequisite statutory criteria for termination have been
met.  Accordingly, we hold that the District Court did not err in terminating the parental
rights of Toni and Kevin.

Affirmed.

/S/   JAMES C. NELSON


We Concur:

/S/   J. A.   TURNAGE
/S/   WILLIAM E. HUNT, SR.
/S/   JIM REGNIER
/S/   TERRY N. TRIEWEILER