No. 98-115

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 32N

In the Matter of Declaring H.G.,

A Youth in Need of Care.

APPEAL FROM: District Court of the Eleventh Judicial District,

In and for the County of Flathead,

The Honorable Ted O. Lympus, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Patrick D. Sherlock, Sherlock & Nardi, Kalispell, Montana; Robert B. Allison, Kalispell, Montana (guardian ad litem)

For Respondent:

Joseph P. Mazurek, Attorney General, Mark W. Mattioli, Assistant Attorney General, Helena, Montana; Thomas J. Esch, Flathead County Attorney, Randy K. Schwickert, Deputy Flathead County Attorney, Kalispell, Montana

Submitted on Briefs: July 16, 1998

Decided: February 24, 1999

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

**¶1. Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal**

Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2. Kathy G. (Kathy), the natural mother of H.G., appeals from the decision of the District Court for the Eleventh Judicial District, Flathead County, terminating her parental rights to H.G. We affirm.

¶3. Kathy raises two issues on appeal, which we have consolidated into one issue and restate as follows:

¶4. Did the District Court err in terminating Kathy's parental rights to H.G.?

## Factual and Procedural Background

¶5. Kathy gave birth to H.G. on December 28, 1992. On July 24, 1995, the Flathead County Family Services Program (FCFSP) and the Montana Department of Public Health and Human Services (DPHHS) filed a petition for temporary investigative authority and protective services of H.G. Later that day, the District Court issued an order wherein it granted FCFSP and DPHHS the authority to take H.G. and place him in a foster home, to require Kathy and H.G. to undergo medical and psychological evaluations, and to authorize reasonable and necessary medical treatment for H.G. The court also appointed a guardian ad litem for H.G., and ordered Kathy to appear at a hearing. H.G. was placed in a foster home on July 25, 1995. After the court's hearing on August 3, 1995, it issued an order which granted the FCFSP and the DPHHSs' petition for temporary investigative authority and protective services.

¶6. On November 3, 1995, the FCFSP filed a motion to continue its temporary investigative authority and protective services. In support of its motion, the FCFSP attached a report from Myra Barron (Barron), a social worker, which recommended that the temporary investigative authority and protective services remain in effect and requested that the court approve two treatment plans to which the FCFSP and Kathy agreed. On November 22, 1995, the court held a hearing on the FCPSP's

motion. Six days later, on November 28, 1995, the court issued an order which granted the FCFSP's motion and approved the treatment plans. Under the terms of the treatment plans, Kathy was required to: (1) complete inpatient chemical dependency treatment; (2) refrain from the use of alcohol and drugs; (3) obtain a psychological evaluation and follow-up treatment; (4) attend scheduled visits with H. G.; (5) attend parenting classes; and (6) participate in the "Coping with Life" support group.

¶7. On August 28, 1996, the State filed a motion wherein it requested the court to approve a supplemental treatment plan which Kathy and Barron signed on May 3, 1996. Under the terms of the supplemental treatment agreement, Kathy was required to: (1) comply with the provisions of her previous treatment plans; (2) continue to attend an outpatient chemical dependency program until graduation; (3) attend alcoholics anonymous and narcotics anonymous meetings; (4) complete and graduate from the "Coping with Life" support group; (5) incorporate the skills that she learned in the "Coping with Life" support group into her daily interactions with others; (6) attend counseling sessions with Bob Piersall (Piersall); and (7) continue to take medications prescribed to her by Dr. Herbert Gray (Dr. Gray). On September 4, 1996, the court issued an order which approved the supplemental treatment plan.

¶8. On October 31, 1996, the FCFSP moved the court to continue the temporary investigative authority and protective services. In support of its motion, the FCFSP filed Barron's Report to the Court dated October 30, 1996, which documented that Kathy had failed to comply with the terms of her treatment plans and stated that the Division of Child and Family Services was planning to request that Kathy's parental rights to H.G. be terminated. After a hearing, the court granted the FCFSP's motion.

¶9. On March 18, 1997, the DPHHS filed a Petition for Permanent Custody and Authority to Assent to Adoption. On that day, William Poston, who Kathy had named as H.G.'s natural father, filed an affidavit wherein he denied paternity and waived his parental rights to H.G. The District Court held a hearing on the DPHHS's petition on September 29, 1997, wherein it heard testimony regarding Kathy's ability to parent H.G. On October 10, 1997, the court issued its Findings of Fact, Conclusions of Law and Order which terminated Kathy's parental rights to H.G. and awarded the DPHHS care, custody and control of H.G.

¶10. On October 29, 1997, Kathy filed motions wherein she moved the court to either

grant her a new trial or to amend its judgment on the basis that the evidence did not support the court's decision to terminate her parental rights. After receiving the DPHHS's brief in opposition to Kathy's motions and conducting a hearing, the court denied Kathy's motions.

¶11. Kathy appeals from the court's Findings of Fact, Conclusions of Law and Order terminating her parental rights and from the court's rulings on her post-trial motions.

### Standard of Review

¶12. This Court reviews a district court's conclusions of law to determine whether the court interpreted the law correctly. *In re A. W-M.*, 1998 MT 157, ¶ 8-9, 960 P.2d 779, ¶ 8-9, 55 St.Rep. 628, ¶ 8-9.

¶13. We review a district court's findings of fact to determine whether the court's findings are clearly erroneous. *A. W-M.*, ¶ 8-9 (citing *Interstate Production Credit Association v. DeSaye* (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287). This Court adopted a three-part test in *DeSaye* to determine whether a district court's finding of fact is clearly erroneous. A finding of fact is clearly erroneous under the *DeSaye* test if it is not supported by substantial evidence; if the district court misapprehended the effect of the evidence; or if, after reviewing the record, this Court is left with a definite and firm conviction that a mistake has been made. *In re E.W.*, 1998 MT 135, ¶ 10, 959 P.2d 951, ¶ 10, 55 St.Rep. 536, ¶ 10 (citing *DeSaye*, 250 Mont at 323, 820 P.2d at 1287).

¶14. This Court has stated that "a natural parent's right to care and custody of a child is a fundamental liberty interest, which must be protected by fundamentally fair procedures." *In re E.W.*, ¶ 12 (quoting *In re R.B., Jr.* (1985), 217 Mont. 99, 103, 703 P.2d 846, 848). Thus, a district court must adequately address each applicable statutory requirement before terminating an individual's parental rights. *In re E.W.*, ¶ 12 (citing *In re R.B., Jr.*, 217 Mont. at 103, 703 P.2d at 848). The party seeking to terminate an individual's parental rights has the burden of proving by clear and convincing evidence that the statutory criteria for termination has been met. *In re E. W.*, ¶ 12 (citing *In re J.L., D.L., and A.G.* (1996), 277 Mont. 284, 288, 922 P.2d 459, 461). In cases involving the termination of parental rights, this Court has stated that

clear and convincing proof is simply a requirement that a preponderance of the evidence be definite, clear, and convincing, or that a particular issue must be clearly established by a preponderance of the evidence or by a clear preponderance of proof. This requirement does not call for unanswerable or conclusive evidence. The quality of proof, to be clear and convincing, is somewhere between the rule in ordinary civil cases and the requirement of criminal procedure--that is, it must be more than a mere preponderance but not beyond a reasonable doubt.

*In re J.L., D.L., and A.G.*, 277 Mont. at 289, 922 P.2d at 462 (quoting *In re Interest of S.M.Q.* (1990), 247 Kan. 231, 796 P.2d 543, 545).

**¶15. When considering the criteria for termination, courts must give primary consideration to the best interests of the child as demonstrated by the child's physical, mental, and emotional conditions and needs. Section 41-3-609(3), MCA. See also *Matter of B.C.* (1997), 283 Mont. 423, 430, 942 P.2d 106, 110 (citation omitted).**

Discussion¶16. *Did the District Court err in terminating Kathy's parental rights to H.G.?*

**¶17. The District Court adjudicated H.G. as a youth in need of care pursuant to § 41-3-102, MCA, and terminated Kathy's parental rights pursuant to § 41-3-609, MCA, which provides in pertinent part:**

(1) The court may order a termination of the parent-child legal relationship upon a finding that any of the following circumstances exist: . . .

(e) the child is an adjudicated youth in need of care and both of the following exist:

(i) an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful; and

(ii) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time; . . . .

Kathy does not dispute that H.G. is a youth in need of care. Instead, she argues that the District Court erred in terminating her parental rights pursuant to § 41-3-609(1)(e), MCA, because there was insufficient evidence to support the court's findings that she failed her

court-approved treatment plans and that her condition was unlikely to change within a reasonable time. We will address each of these issues in turn.

## A.

¶18. *Did the District Court err in finding that Kathy failed to comply with her treatment plan?*

¶19. The District Court found that Kathy failed to comply with her court-approved treatment plans. Kathy does not dispute that she failed to comply with her treatment plans. Rather, she argues that her noncompliance was insubstantial. Notwithstanding Kathy's argument, partial compliance with a treatment plan is insufficient to preclude termination of parental rights. *Matter of B.C.*, 283 Mont. at 430, 942 P.2d at 111 (citing *Matter of J.J.C.H.* (1992), 252 Mont. 158, 164, 827 P.2d 812, 816).

¶20. Moreover, even if substantial compliance was sufficient to preclude termination of parental rights, we disagree with Kathy's argument that her noncompliance was insubstantial. Kathy's treatment plan required her to refrain from drinking alcohol. In spite of this requirement, the record shows that Kathy drank on one occasion to the point of not being able to recall how she traveled from a bar to her apartment. The record also shows that Kathy was required, but failed, to complete inpatient chemical dependancy treatment, complete outpatient chemical dependancy treatment, complete psychological treatment and counseling, and to take medications which Dr. Gray prescribed to her. Thus, it cannot be said that Kathy's noncompliance was insubstantial.

¶21. Kathy also contends that the District Court erred in finding that she failed to comply with her treatment plans because she was not given sufficient time to complete her treatment plans. However, Kathy had more than twenty-one months from the date the court approved her first treatment plan to the date of the court's hearing on the petition to terminate her parental rights to H.G. Kathy also had eleven months from the date that the court approved her second treatment plan to the date of the court's hearing on the petition. As a result, we conclude that Kathy had adequate time to comply with and complete her treatment plans.

¶22. Accordingly, having thoroughly reviewed the record in this case, we conclude

that there is clear and convincing evidence supporting the District Court's finding that Kathy failed her court-approved treatment plans.

## B.

**¶23.** *Did the District Court err in finding that Kathy's conduct or condition is unlikely to change within a reasonable time?*

**¶24. The District Court found that "[t]he conduct and condition that renders Kathy unfit as a parent is not likely to change within a reasonable time measuring reasonable from the point of view of [H.G.'s] needs and interests." Kathy urges this Court to reverse the District Court's finding based on testimony that she had matured and become more responsible.**

**¶25. Section 41-3-609(2), MCA, provides in pertinent part:**

(2) In determining whether the conduct or condition of the parents is unlikely to change within a reasonable time, the court shall enter a finding that continuation of the parent-child legal relationship will likely result in continued abuse or neglect or that the conduct or the condition of the parents renders the parents unfit, unable, or unwilling to give the child adequate parental care. In making the determinations, the court shall consider but is not limited to the following:

(a) emotional illness, mental illness, or mental deficiency of the parent of a duration or nature as to render the parent unlikely to care for the ongoing physical, mental, and emotional needs of the child within a reasonable time; . . .

(d) excessive use of intoxicating liquor or of a narcotic or dangerous drug that affects the parent's ability to care and provide for the child; . . .

and

(g) any reasonable efforts by protective service agencies that have been unable to rehabilitate the parent.

**¶26. In support of her argument, Kathy points to testimony from several witnesses**

who stated that Kathy had matured and was "pulling her life together in a positive manner." Even so, most of the witnesses who testified agreed that Kathy was not likely to change her conduct and conditions so as to become a capable parent in a reasonable amount of time. Piersall, for example, testified that Kathy had "progressed," had the potential to progress further, and that her outlook on life had improved. Piersall, however, went on to state that he "couldn't make a strong argument" against the statement that Kathy's chances of becoming a successful parent were "very poor" because "the truth is [that] Kathy is a very fragile person with many problems." Dr. Gray testified that Kathy suffers from bipolar disorder but could possibly change her behavior so as to become a capable parent by taking the medication which he prescribed to her. Dr. Gray explained, however, that the problems concerning whether she would stay on the medications was "massive." Joanne Graves-Gill (Graves-Gill), a chemical dependancy counselor who had treated Kathy, testified that Kathy did not appear to relate her chemical use as a factor in the continued problems that she experienced. Graves-Gill also testified that Kathy's relapse potential was "very high." Ruth Watkins, a clinical psychologist who treated Kathy, testified that working with Kathy "is like pulling teeth" and opined that Kathy's behavior was unlikely to change in a reasonable amount of time. As a final example, Theresa Luhman, a treatment supervisor for therapeutic foster care who had worked with Kathy and H.G., testified that, although she had observed Kathy "making gains," it was "very unlikely" that Kathy could make the necessary changes in her behavior to "do what is right for [H.G.]."

¶27. Thus, it is clear from the record that, based on Kathy's mental illness, use of alcohol and drugs, and the unsuccessful efforts of protective services agencies to rehabilitate her, Kathy's conduct and behavior was unlikely to change in a reasonable time. Section 41-3-609(2), MCA. Accordingly, we hold that there is clear and convincing evidence supporting the District Court's finding that the conduct and conditions that render Kathy unfit as a parent was unlikely to change within a reasonable time even though many witnesses testified that Kathy had made progress.

¶28. Based on the foregoing, we hold that clear and convincing evidence supports the District Court's findings that Kathy failed to comply with her treatment plans and that the conditions and conduct that made her unfit as a mother were unlikely to change within a reasonable time. Accordingly, we hold that the District Court correctly terminated Kathy's parental rights to H.G.

**¶29. Affirmed.**

/S/ JAMES C. NELSON

We Concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ WILLIAM E. HUNT, SR.

/S/ TERRY N. TRIEWEILER