No. 90-132

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

STATE OF MONTANA,
    Plaintiff and Respondent,
-vs-
MATTHEW AMES EDMUNDSON,
    Defendant and Appellant.



FILED

OCT 23 1990

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Twentieth Judicial District,
               In and for the County of Lake,
               The Honorable Ted L. Mizner, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

          C. F. Mackay, Anaconda, Montana

       For Respondent:

          Marc Racicot, Attorney General, Jennifer Anders,
          Assistant Attorney General, Helena, Montana;  Larry
          Nistler, County Attorney, Robert S. Anderson, Deputy, Polson,
          Montana

Submitted:  July 13, 1990

Decided:  October 23, 1990

Filed:

_____
               Clerk

Justice William E. Hunt, Sr., delivered the Opinion of the Court.

This appeal follows a hearing in the District Court of the Twentieth Judicial District in and for the County of Lake revoking defendant's conditional release from the Montana State Hospital. We affirm.

The following issues are presented for review:

1. Whether the District Court erred when it allowed hearsay evidence to be admitted under the regular conducted activities exception.

2. Whether there was sufficient evidence before the court upon which to base its order of revocation.

Defendant, Matthew Ames Edmundson, was originally charged with the crime of deliberate homicide in violation of § 45-5-102(1)(a), MCA (1983). On March 17, 1989, the defendant was found unfit to stand trial and was civilly committed to the Montana State Hospital at Warm Springs (Warm Springs). The trial was suspended until defendant was fit to proceed. The District Court ultimately found defendant not guilty of deliberate homicide by reason of mental disease or defect. Subsequently, at a separate hearing on October 13, 1989, the court conditionally released defendant from Warm Springs pursuant to § 46-14-303, MCA. The court ordered that the conditions of the release, among others, would be that he would reside at the Harbinger House and participate in the Lamplighter House day treatment program, both of Kalispell, for a five year term; that he would abide by all house rules and refrain from any

2

inappropriate behavior to his peers.

On November 20, 1989, approximately one month after defendant's admission to the home, Daniel George, Harbinger House and Lamplighter director, informed the Lake County Attorney of defendant's inappropriate behavior which violated the conditional release. Later that same day, the State of Montana moved to revoke defendant's conditional release based on these violations. Following a revocation hearing, the District Court found that "the conditions of defendant's release have not been fulfilled and that the safety of the defendant and others in the community would be threatened if his conditional release were continued." Accordingly the District Court revoked defendant's conditional release and recommitted him to Warm Springs. Defendant appeals this order.

The State's only witness at the revocation hearing was Daniel George. Much of Mr. George's testimony was based on regularly written reports of behavioral problems and counseling sessions kept in the regular course of business of the Harbinger House and prepared by a staff therapist. The court allowed this testimony over hearsay objections of defense counsel. According to a recorded entry of October 26, 1989, Mr. George testified that defendant, upon admission, was fully advised of the house rules, both orally and in writing. The house rule on curfew required that residents be in the rooms by 10:00 p.m. with lights out by 11:00 p.m. Defendant reportedly violated the curfew rule by getting up in the middle of the night on several occasions, despite staff warnings, to watch television with the sound off. Mr. George testified that although defendant's behavior did not necessarily

3

disturb anyone, it was clinically significant in light of a history of possible auditory hallucinations, or messages, he received from television, as well as his violence surrounding the use of the television.

Another condition of defendant's release required defendant to "abstain from all acts of violence or inappropriate behavior toward his peers in the said programs, the mental health staff in the programs, or the community at large." At the revocation hearing, Mr. George described defendant's inappropriate behavior toward women in the group home. Mr. George testified that the defendant had a habit of glaring at, or staring down women in an intimidating manner. At one point a staff member overheard defendant refer to women as "fucking, mind controlling bitches" and how he could get better if he got "laid." In addition, defendant wrote a song about the murder which he occasionally sang to the women residents. The group home manager overheard defendant singing the song, the partial lyrics of which are "I killed her and the whore deserved it, if I had to do it over, I wouldn't change a thing." In further violation, defendant was reportedly talking about the murder, describing the event in graphic detail, to the other residents as well as a member of the community. One woman resident became so frightened of defendant that she moved out of the Harbinger House.

Despite counseling by his therapist and warnings that the above behavior was inappropriate because it was disruptive and unsettling for other residents, the defendant did not alter his behavior appropriately. Furthermore, the group home manager

4

overheard defendant talking to himself on the back porch while he was alone. He reportedly said "I can't do it, I can't do it, not right now." This reported incident led Mr. George to conclude that, despite medications, the defendant was responding to auditory hallucinations which indicated that he required a much more structured environment than that offered by the group home.

Following the revocation hearing, the District Court ordered that defendant's conditional release be revoked. We hold the District Court properly revoked defendant's conditional release.

As his first assignment of error, defendant argues that the District Court incorrectly admitted hearsay testimony into evidence. We disagree.

Rule 803(6), M.R.Evid. provides for the admissibility of hearsay if the testimony is from records of regularly conducted activities:

> (6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnosis, made at or near the time of the acts, events, conditions, opinions, or diagnosis, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or date compilation, all as shown by the testimony of the custodian or other qualified witness, unless the sources of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

The District Court established that the recorded entries from which Mr. George testified were made in the regular course of business of the Harbinger House. The entries were recorded by defendant's primary therapist, Randy Moddrell, whose duty it was to make sure

5

that any reported behavioral problems were recorded in defendant's file. The entries were recorded when the incidents were fresh in the therapist's mind, thereby reinforcing their degree of trustworthiness. We find that the records from which Mr. George testified were records of regularly conducted activities, and, therefore his testimony was excepted from the hearsay ban of Rule 802, M.R.Evid., as an exception under Rule 803(6), M.R.Evid.

Defendant asserts that by admitting the hearsay testimony, the District Court denied defendant due process of law. Defendant argues that he was not able to confront his accusers as is guaranteed by the Sixth Amendment of the United States Constitution. Defendant's argument is misplaced. The confrontation clause of the Sixth Amendment only attaches to criminal proceedings. Defendant was adjudged clinically insane and committed to the Montana State Hospital. Subsequently, the District Court conditionally released defendant to the Harbinger House for treatment. The revocation hearing was a summary hearing to determine if defendant violated his conditional release to the Harbinger House rather than to establish criminal culpability. The revocation hearing concerning the re-commitment of defendant to Warm Springs was a civil proceeding just as was the prior hearing to conditionally release defendant from Warm Springs. Sections 46-14-301, MCA, et seq. pertain to the commitment, discharge, release, and re-commitment of a person to the Montana State Hospital. When read together, these sections of this statute characterize the revocation proceeding as civil in nature. This is not a criminal case. Defendant has not been accused of committing a crime. The

6

guarantees afforded by the Confrontation Clause do not attach to revocation hearings of this type which are civil in nature. We hold that the testimony offered by Mr. George was properly admitted based on the traditional indicia of reliability that these records of regularly conducted activity bear, and that defendant was not denied due process of law when the District Court admitted the subject testimony.

Defendant's next assignment of error is that the District Court's determination that the defendant violated the conditions of his release was not substantiated by sufficient evidence. The revocation statute, § 46-14-304, MCA, mandates that the court immediately recommit any person who has violated the conditions of his or her release and when the safety of the person and others so requires. The evidence that the court relies on pursuant to § 46-14-304, MCA, must satisfiy the court that the conduct of the person on release has not been in keeping with the conditions of the release agreement. In State v. Kern (1984), 212 Mont. 385, 389, 695 P.2d 1300, 1302, we applied this reasonable standard in a hearing revoking defendant's probation and we now find that it is also an appropriate standard for the hearing revoking defendant's conditional release from Warm Springs.

The record before us, as established by Mr. George's testimony, clearly shows that defendant has violated the group home's curfew rule several times by getting up late at night to watch television, even after repeated warnings. In addition, defendant was in violation of his conditional release calling for appropriate behavior by frightening the female residents and staff

with his graphic details of the murder he committed and his talk about "mind controlling bitches" and "getting laid" and his staring intimidation of women residents.

The evidence is credible, reliable and well grounded within an established hearsay exception. The evidence upon which the District Court based its determination to revoke defendant's conditional release was sufficient to establish that defendant persistenly violated at least two conditions of his release even after staff warnings. More importantly, the testimony regarding defendant's bizarre behavior raised serious questions as to the safety of other group home residents and the community in general.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

8