No. 97-482

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 222

MARY K. BEAN, an individual,

Petitioner and Appellant,

vs.

MONTANA BOARD OF LABOR APPEALS;

MONTANA DEPARTMENT OF LABOR AND

INDUSTRY; COMMUNITY NURSING, INC.,

d/b/a VILLAGE HEALTH CARE CENTER

and DOES 1-10, inclusive,

Respondents and Respondents.

APPEAL FROM: District Court of the Fourth Judicial District,

In and for the County of Missoula,

The Honorable Ed McLean, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Donald V. Snavely, Snavely Law Firm, Missoula, Montana

For Respondent:

Maureen L. Hall, Garlington, Lohn & Robinson, Missoula, Montana (Village Health Care Center); Daniel B. McGregor, Department of Labor and Industry, Helena, Montana

Submitted on Briefs: January 15, 1998

Decided: September 3, 1998

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶ **Mary Bean (Bean), an unemployment compensation claimant, appeals from an order of the Fourth Judicial District Court, Missoula County, denying judicial review and affirming the decision of the Board of Labor Appeals (BOLA) which adopted the findings of fact and decision of the appeals referee denying Bean unemployment benefits. We reverse and remand for further proceedings consistent with this Opinion.**

¶ **We restate the following issues raised on appeal:**

¶ **1. Are hearsay reports of witnesses describing alleged misconduct committed by Bean at work admissible into evidence as "business records" of her employer?**

¶ **2. Has consideration of these inadmissible hearsay reports deprived Bean of her constitutional rights to confront and cross-examine adverse witnesses?**

**¶ 3. May a decision denying a claim for unemployment compensation benefits, on the ground that a claimant committed "willful misconduct" during the course of her employment, be based entirely on inadmissible hearsay reports from witnesses unavailable for confrontation or cross-examination at the hearing?**

## FACTUAL AND PROCEDURAL BACKGROUND

**¶ The underlying facts of this case are set forth in our opinion,** *Bean v. Board of Labor Appeals* **(1995), 270 Mont. 253, 891 P.2d 516 (*Bean I*):**

> Bean's employment as a licensed practical nurse with Community Nursing, Inc., doing business as Village Health Care Center (Village Health), ended with her discharge on March 22, 1993, allegedly for failure to improve her conduct and inappropriate criticism of Village Health's operation. After her discharge, Bean filed for unemployment insurance benefits with the Montana Department of Labor and Industry (Department). A Department deputy twice denied Bean's claim on the basis that she was discharged for misconduct and, as a result, was ineligible to receive benefits. Bean appealed the decision to an appeals referee (referee).
>
> A telephonic hearing was held on June 29, 1993; the parties were at separate locations in Missoula and the referee was in Helena. The referee subsequently issued written findings of fact and a decision concluding that Bean was discharged for misconduct and, thus, ineligible for unemployment benefits. Bean appealed to the BOLA. The BOLA, following a fifteen minute telephonic argument presented by Bean's counsel, issued a one-paragraph decision adopting the referee's findings of fact and decision.
>
> Bean petitioned the District Court for judicial review of the BOLA's decision. The District Court denied her petition and affirmed the BOLA's decision denying unemployment benefits. Bean appeal[ed].

*Bean I*, 270 Mont. at 255-56, 891 P.2d at 518. On appeal, we concluded that the BOLA

violated § 24.7.306(1), ARM, when it adopted the referee's findings and decision without considering the entire record before it. We reversed and remanded the case to the District Court for an order remanding the case to the BOLA for reconsideration and redetermination of Bean's appeal. *Bean I*, 270 Mont. at 260, 891 P.2d at 520.

¶ **On remand, the BOLA ordered that a *de novo* hearing be held with all parties and witnesses personally present and subject to confrontation and cross-examination. On April 18, 1996, this hearing was held in Missoula. Bean and a number of witnesses who had worked for Village Health during Bean's period of employment testified including Suzanne Denend, Director of Nursing, and Susan Allen, Social Service Director. In addition to oral testimony, a number of documents were admitted into evidence including Bean's March 22, 1993 Termination Notice, March 22, 1993 Termination Report with an attached March 18, 1993 incident report (Incident Report), as well as other prior disciplinary reports, including those referenced in Bean's Termination Notice.**

¶ **The Incident Report was prepared by Allen on March 18, 1993, and was based, not on Allen's own personal knowledge, but on information she received on March 18, 1993, from Ilene Rici (Rici), the daughter of a Village Health resident, concerning Bean's alleged misconduct. On March 18, 1993, Allen telephoned Rici to discuss her complaint concerning a separate March 17, 1993 incident where Rici's mother was found unattended in Village Health's parking lot. As indicated in the Incident Report, during this inquiry, Rici also explained she had spoken with Bean immediately after the March 17, 1993 incident and was concerned about Bean's derogatory comments regarding Village Health and Bean's discussion of other residents' personal information such as what they did for a living. After Allen provided Denend with the Incident Report, Denend terminated Bean's employment.**

¶ **Bean objected to the admission of the Incident Report and testified that she never made such remarks concerning Village Health and was not sure she had ever spoken with Rici. Additionally, Bean objected to the admission of the other prior disciplinary reports. Despite Bean's objections, the referee admitted all offered documentary evidence, specifically admitting as "business records" Bean's Termination Notice, Termination Report and the Incident Report attached thereto, as well as the other prior disciplinary reports concerning Bean's misconduct. In particular, the referee admitted the Incident Report into evidence as a business record based only on Allen's testimony regarding the Incident Report. Rici, who provided Allen with the**

information contained in the Incident Report concerning Bean's alleged misconduct, never testified; in fact, Village Health never subpoenaed her as a witness.

¶ On June 14, 1996, the referee entered a written decision again denying Bean unemployment compensation benefits on the ground that she was discharged for misconduct. Bean once again appealed to the BOLA. However, on September 26, 1996, after a brief oral argument and without consideration of new evidence, the BOLA affirmed the decision of the referee, adopting the decision as its own. Pursuant to § 39-51-2410, MCA, Bean petitioned for judicial review with the Fourth Judicial District Court, Missoula County. On May 23, 1997, the District Court denied Bean's petition for judicial review and entered an order affirming the decision issued by the referee and adopted by the BOLA. From this decision, Bean appeals.

## DISCUSSION

¶ As an appellate tribunal, we review the decision of the BOLA for any errors of law. Section 39-51-2410(5), MCA. The BOLA's decision will be upheld if substantial evidence supports it; therefore, we review the decision of the BOLA to determine whether its findings of fact are supported by substantial evidence. Whether substantial evidence supports the BOLA's decision is a question of law. *Jordan v. Craighead* (1943), 114 Mont. 337, 343, 136 P.2d 526, 528; *Noone v. Reeder* (1968), 151 Mont. 248, 252, 441 P.2d 309, 311-12. Our review of questions of law is plenary. *Steer, Inc. v. Dept. of Revenue* (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603.

¶ To determine whether the BOLA's findings are supported by substantial evidence, we must first determine what constitutes substantial evidence to support an administrative agency decision. Relying on § 24.7.312, ARM, Village Health argues that, in unemployment compensation hearings, evidence is admissible if reasonable people would rely on it in conducting their serious affairs and that the statutory rules of evidence do not govern. We disagree. As we have previously explained, "[a]lthough the Rules of Evidence are generally more relaxed in an administrative proceeding than in a court of law, they are not to be relaxed to the point of disregarding due process of law and the fundamental rights of the individual." *Matter of Teaching Certificate of Thompson* (1995), 270 Mont. 419, 427, 893 P.2d 301, 305-06 (holding that an administrative agency's decision may not be based upon inadmissible expert opinion). Consequently, as we explained in *Thompson*, we must review the BOLA's findings, adopted in whole from the findings of the referee, "to

determine whether they are supported by reliable, probative and substantial evidence in the record." *Thompson*, 270 Mont. at 431, 893 P.2d at 308.

¶ We agree with Bean that to determine whether substantial evidence exists, only admissible evidence may be considered. *See Noone,* 151 Mont. at 252, 441 P.2d at 311-12. Under § 39-51-2410(5), MCA, the BOLA's findings must be supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion or, stated another way, enough evidence to justify a refusal to direct a verdict on a factual issue in a jury trial." *Noone*, 151 Mont. at 252, 441 P.2d at 311-12. That is, the decision must be supported by credible, admissible evidence. *See State v. Johnson* (1978), 177 Mont. 182, 580 P.2d 1387.

¶ Accordingly, we hold that, with respect to agency findings of fact, substantial evidence must consist of admissible evidence. Consequently, testimony that is inadmissible hearsay may not be considered in determining whether substantial evidence exists to support an agency's findings. Rather, there must be some admissible evidence to establish the foundation of substantial evidence. Therefore, the BOLA's decision in this case denying Bean unemployment benefits cannot be based upon inadmissible hearsay reports alone.

¶ Additionally, Bean argues, and the Department concurs, that an employer who contests an unemployment compensation claim bears the burden of proving that the claimant was discharged for employee misconduct. While we have not previously addressed this issue, we note that a majority of states require an employer to bear this burden. *See Parker v. St. Maries Plywood* (Idaho 1980), 614 P.2d 955, 958 (listing jurisdictions placing the burden of proof on the employer). After joining the majority of jurisdictions adopting this burden of proof, the Idaho Supreme Court explained:

> The employer is in a unique position to know the reasons for his employee's discharge and access to the facts relating to that discharge will be more readily obtained by the employer than the employee. Further, as a practical matter, the task of proving the existence of employee misconduct will be much easier for the employer than would be the employee's task of disproving a charge of employee misconduct. The employee may not always know what the employer's reasons were for discharging him.

*Parker*, 614 P.2d at 959. We agree with the sound rationale of the Idaho Supreme Court.

Therefore, we hold that an employer who challenges the eligibility of an unemployment compensation benefits claimant on the ground that the claimant was discharged for employee misconduct bears the burden of proving that the employee was in fact discharged for employee misconduct. *See Parker*, 614 P.2d at 959.

¶ 1. Are hearsay reports of witnesses describing alleged misconduct committed by Bean at work admissible into evidence as "business records" of her employer?

¶ **In the case at bar, Village Health submitted evidence to the referee consisting of not only the March 18, 1993 Incident Report attached to Bean's Termination Report but also other disciplinary reports pertaining to prior alleged incidents of misconduct including those referenced in Bean's Termination Notice. However, the sole reason given for Bean's termination in her Termination Report was her "[f]ailure to deport [her]self in a professional manner [with] family member" and attached thereto was the March 18, 1993 Incident Report. Additionally, Village Health's own witnesses, Suzanne Denend and Susan Allen, testified that the other incidents of Bean's misconduct had been corrected and did not form the basis of Bean's discharge; rather, Bean's discharge was based solely on the incident described in the March 18, 1993 Incident Report. Despite Bean's objections, the referee admitted all of these documents into evidence.**

¶ **In *Galbreath v. Golden Sunlight Mines, Inc.* (1995), 270 Mont. 19, 23, 890 P.2d 382, 385, we explained that, in a wrongful discharge action, any reasons for discharge other than those set forth in the discharge letter are irrelevant, and, thus, inadmissible. Consequently, we hold that evidence of incidents of misconduct allegedly committed by Bean other than that described in the March 18, 1993 Incident Report was irrelevant, and, therefore, improperly admitted into evidence. Accordingly, our review in the instant appeal is limited to a determination of whether the Incident Report alone constitutes admissible and substantial evidence supporting the BOLA's decision to deny Bean unemployment benefits.**

¶ **Bean argues that the Incident Report constituted hearsay evidence that was not admissible under Rule 803(6), M.R.Evid., the business records exception to the hearsay rule. Village Health responds that the Incident Report was prepared in the ordinary course of Village Health's business, and, therefore, was admissible under the business records exception. While the Department concedes that denial of unemployment benefits cannot be premised solely on inadmissible hearsay evidence,**

it argues that such is not the case here. Rather, the Department adopts Village Health's argument that the Incident Report was admissible as a business record. We disagree.

¶ Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 801(c), M.R.Evid. Hearsay evidence is not admissible unless it falls within an exception to the hearsay rule. Rule 802, M.R.Evid. One exception to the hearsay rule is the "business records exception" which provides:

> Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnosis, made at or near the time of the acts, events, conditions, opinions, or diagnosis, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make a memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. . . . The term "business" as used in this paragraph includes business, institution, association, profession, occupation and calling of every kind, whether or not conducted for profit.

Rule 803(6), M.R.Evid. Business records are presumed reliable for two general reasons: 1) employees generating these records are motivated to accurately prepare these records because their employer's business depends on the records to conduct its business affairs; and 2) the routine and habit of creating these records also lends reliability. These reasons are lacking when a document is prepared for use outside normal business operations, especially for use in litigation. *United States v. Blackburn* (7th Cir. 1993), 992 F.2d 666, 670, *cert. denied*, 114 S.Ct. 393 (1993) ("adher[ing] to the well-established rule that documents made in anticipation of litigation are inadmissible under the business records exception").

¶ In *Palmer v. Hoffman* (1943), 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645, the United States Supreme Court held that an accident report made by a railroad engineer was not admissible as a business record because the report was "not a record made for the systematic conduct of the business as a business." *Palmer*, 318 U.S. at 113, 63 S. Ct. at 480, 87 L.Ed. 645. Rather, the Supreme Court concluded that the report's

"primary utility [was] in litigating, not in railroading." *Palmer*, 318 U.S. at 114, 63 S. Ct. at 481, 87 L.Ed. 645. The Supreme Court explained:

> Any business by installing a regular system for recording and preserving its version of accidents for which it was potentially liable could qualify those reports under the Act [28 U.S.C. § 695]. The result would be that the Act would cover any system of recording events or occurrences provided it was "regular" and though it had little or nothing to do with the management or operation of the business as such. Preparation of cases for trial by virtue of being a "business" or incidental thereto would obtain the benefits of this liberalized version of the early shop book rule. The probability of trustworthiness of records because they were routine reflections of the day to day operations of a business would be forgotten as the basis of the rule. Regularity of preparation would become the test rather than the character of the records and their earmarks of reliability acquired from their source and origin and the nature of their compilation.

*Palmer*, 318 U.S. at 113-14, 63 S.Ct. at 480-81, 87 L.Ed. 645 (citations omitted).

¶ **The language of Rule 803(6), M.R.Evid., supports the rationale of *Palmer*. That is, Rule 803(6), M.R.Evid., not only requires that the reported activity be a regularly conducted business activity, but the rule precludes admission of regularly prepared business records when "the source of information or the method or circumstances of preparation indicate lack of trustworthiness." In this instance, the Incident Report lacks trustworthiness for a number of reasons, and, consequently, does not qualify as a business record.**

¶ **First, the Incident Report, like the accident report in *Palmer*, was not prepared as a part of Village Health's routine business activity of administering nursing services to elderly residents. Rather, the Incident Report was prepared as a part of Village Health's activity of disciplining employees, an activity incidental to its main business activity. Moreover, the Incident Report led to Bean's discharge for cause. Consequently, the very nature of the Incident Report indicates that Village Health prepared it in anticipation of potential litigation over Bean's discharge such as a wrongful discharge claim or an unemployment compensation claim. Any documents created in anticipation of litigation do not qualify as business records because they lack sufficient guarantees of trustworthiness. *See Hunter v. City of Bozeman* (1985),**

216 Mont. 251, 700 P.2d 184. *See also Palmer*, 318 U.S. at 113-14, 63 S.Ct. at 480-81, 87 L.Ed. 645, and *Blackburn*, 992 F.2d at 670.

¶ Second, even if the Incident Report qualified as a business record, it still would be inadmissible because the Incident Report contained the hearsay statement of Rici, a third party who was not charged with accurately reporting events to Village Health. *See e.g. Romano v. Howarth* (2nd Cir.1993), 998 F.2d 101, 107-08 (holding that a nurse's progress notes were not admissible under the business records exception to the hearsay rule because while the nurse's business duty to accurately record plaintiff's behavior ensured the accuracy of her notes, it did not guarantee the accuracy of information provided to her by others not under a similar duty). *See also Gray v. Busch Entertainment Corp.* (2nd Cir. 1989), 886 F.2d 14, 15-16 (holding that the statement of a patron's daughter in an amusement park's first aid report concerning the cause of the patron's accident was not admissible under the business records exception to the hearsay rule because the patron's daughter was not acting in the ordinary course of business). Although Allen, the Village Health Social Service Director who prepared the Incident Report, may well have accurately recorded the information Rici provided her, this does not ensure that Rici, who was not employed by Village Health and who was admittedly upset with Village Health's treatment of her mother, accurately reported the information about Bean to Allen. Moreover, certain testimony indicated that Allen wanted Bean's employment terminated. This testimony further degrades the trustworthiness of the Incident Report. *See Romano*, 998 F.2d at 108 (explaining that even if a person had a business duty to accurately report incidents, the trustworthiness of a business record prepared by that person is still questionable if that person had motive to report falsely).

¶ Village Health cites *State v. Edmundson* (1990), 246 Mont. 241, 805 P.2d 1289, to argue that, just as the reports in *Edmundson* were properly admitted as business records, the Incident Report in the case at bar was properly admitted as a business record. However, we agree with Bean that *Edmundson* is not on point. *Edmundson* involved the revocation of Edmundson's conditional release from the Montana State Hospital at Warm Springs and placement with a treatment program in a group home after Edmundson violated the conditions of his release by engaging in certain prohibited behavior such as violating his curfew and behaving in a threatening manner toward women. At the revocation hearing, the State offered proof of Edmundson's behavior through the testimony of only one witness, the director of the treatment program. The director's testimony was primarily based on reports

describing Edmundson's behavior made by Edmundson's primary therapist. The district court allowed this testimony despite Edmundson's hearsay objections. *Edmundson*, 246 Mont. at 242-44, 805 P.2d at 1290-91.

¶ We affirmed the district court's decision to admit these hearsay statements under the business records exception of Rule 803(6), M.R.Evid. *Edmundson*, 246 Mont. at 245, 805 P.2d at 1292. We explained that the recorded entries that the program director testified from were made in the regular course of business of the group home by Edmundson's primary therapist, who had a duty to record any reported behavioral problems in Edmundson's file, and while the incidents were fresh in the therapist's mind. Thus, we concluded that the records were trustworthy and qualified as business records under Rule 803(6), M.R.Evid. *Edmundson*, 246 Mont. at 244, 805 P.2d at 1292.

¶ As such, *Edmundson* is a good example of the distinction made in *Palmer* that, to be admissible, business records must report information concerning a primary business activity of the business for which there is a duty and a motive to report truthfully. Consequently, unlike the reports in *Edmundson*, the Incident Report in the case at bar does not qualify as a business record because, as we explained previously, the Incident Report was prepared as a part of an activity incidental to Village Health's main business activity of administering nursing services to elderly residents and in anticipation of litigation. Furthermore, the information contained in the Incident Report was provided by a third party who was not employed by Village Health, and, thus, had no duty to report accurately to Village Health.

¶ Finally, we also agree with Bean that the admission of the Incident Report as a "business record" violated the applicable rules of the BOLA. Specifically, § 24.7.312 (1), ARM, allows consideration of evidence "on which responsible persons are accustomed to rely in the conduct of serious affairs." While many types of hearsay evidence are admissible under recognized exceptions to the hearsay rule, *see* Rules 803 and 804, M.R.Evid., other types of hearsay do not fall within these exceptions because they generally do not satisfy the essential rationale of the hearsay rule that to be admissible, the hearsay evidence must bear circumstantial guarantees of trustworthiness. Consequently, hearsay not falling within one of the hearsay exceptions is not the type of evidence "on which responsible persons are accustomed to rely in the conduct of serious affairs." Moreover, § 24.7.301(c), ARM, which summarizes the procedural rights of unemployment compensation claimants, states

that all hearings must be fair and conducted in accordance with procedural safeguards which include cross-examination; adequate evidence to support pertinent and necessary findings of fact; and substantial evidence as revealed by the files, records and evidence taken at the hearing to support it.

¶ In light of the foregoing, we conclude that the Incident Report lacks any circumstantial guarantees of trustworthiness, and, therefore, does not qualify as a business record pursuant to Rule 803(6), M.R.Evid. Accordingly, we hold that the Incident Report constituted inadmissible hearsay and was improperly admitted into evidence.

¶ 2. Has consideration of these inadmissible hearsay reports deprived Bean of her constitutional rights to confront and cross-examine adverse witnesses?

¶ Bean argues that her constitutional rights to confront and cross-examine adverse witnesses were violated because all of the critical evidence admitted against her consisted of inadmissible hearsay statements made by persons who did not testify at her eligibility hearing. Relying on *Richardson v. Perales* (1971), 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842, Village Health simply responds that Bean failed to subpoena any adverse witnesses, and, consequently, she cannot now claim that her due process rights were denied. The Department concurs with Bean that she must be afforded the right to confront and cross-examine witnesses against her, but disagrees that Bean was not afforded that right in this case. Rather, the Department adopts Village Health's argument and rationale that Bean cannot now claim her due process rights were violated when she herself failed to call certain witnesses. Again, we disagree.

¶ Unemployment compensation claimants are entitled to due process before being denied those benefits. *See Goldberg v. Kelly* (1970), 397 U.S. 254, 90 S.Ct. 1011, 25 L. Ed.2d 287. *See also California Dept. of Human Resources Development v. Java* (1971), 402 U.S. 121, 91 S.Ct. 1347, 28 L.Ed.2d 666, and § 24.7.301(c), ARM (setting forth the procedural rights of unemployment compensation claimants). In *Goldberg*, the Supreme Court held that "[i]n almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." *Goldberg*, 397 U.S. at 269, 90 S.Ct. at 1021, 25 L.Ed.2d 287. Furthermore, the Supreme Court stated that "[t]his Court has been zealous to protect these rights from erosion. It has spoken out not only in criminal cases, . . . but also in all types of cases where administrative . . . actions were under scrutiny."

*Goldberg*, 397 U.S. at 270, 90 S.Ct. at 1021, 25 L.Ed.2d 287 (citation omitted). Similarly, we have "been zealous to protect these rights from erosion" not only in criminal cases but in civil and administrative cases as well. *See State v. Clark*, 1998 MT 221. *See also Bonamarte v. Bonamarte* (1994), 263 Mont. 170, 866 P.2d 1132; *Taylor v. Taylor* (1995), 272 Mont. 30, 899 P.2d 523; and *Matter of B.C.*, (1997), 283 Mont. 423, 942 P.2d 106 (a series of cases limiting the use of live telephonic testimony in contested factual proceedings due to the inability of the parties to confront and cross-examine adverse witnesses in person).

¶ As we explained in *Bonamarte*, 263 Mont. at 174, 866 P.2d at 1134:

> Requiring a witness to testify personally at trial serves a number of important policies and purposes. A witness' personal appearance in court:
>
> 1. assists the trier of fact in evaluating the witness' credibility by allowing his or her demeanor to be observed firsthand;
>
> 2. helps establish the identity of the witness;
>
> 3. impresses upon the witness, the seriousness of the occasion;
>
> 4. assures that the witness is not being coached or influenced during testimony;
>
> 5. assures that the witness is not referring to documents improperly; and
>
> 6. in cases where required, provides for the right of confrontation of witnesses.

¶ In addition to constitutional due process protections, Rule 611(e), M.R.Evid., provides that "[e]xcept as otherwise provided by constitution, statute, these rules, or other rules applicable to the courts of this state, at the trial of an action, a witness can be heard only in the presence and subject to the examination of all the parties to the action, if they choose to attend and examine." In *Bonamarte*, we noted that the right

of confrontation, long provided for in criminal cases, is also required in civil cases under Rule 611(e), M.R.Evid. *Bonamarte*, 263 Mont. at 174, 866 P.2d at 1134. Furthermore, we explained in *Taylor* that Rule 611(e), M.R.Evid., also applies to administrative proceedings pursuant to § 2-4-612(2), MCA, which provides: "Except as otherwise provided by statute relating directly to an agency, agencies shall be bound by common law and statutory rules of evidence." *Taylor*, 272 Mont. at 34, 899 P.2d at 525.

¶ In *Bonamarte*, we concluded that the integrity of the fact finding process at trial is undermined where the parties do not have the opportunity to confront and effectively cross-examine each other or the witnesses and where the fact-finder has no opportunity to observe the parties and the witnesses. *Bonamarte*, 263 Mont. at 175, 866 P.2d at 1135. Moreover, we stated that "[t]he opportunity to observe a witness is so critical to judicial control and effective cross-examination that its denial is manifestly prejudicial." *Bonamarte*, 263 Mont. at 178, 866 P.2d at 1137 (citation omitted). However, rather than adopting a *per se* rule precluding the use of telephonic testimony, we employed a balancing test that permitted the use of telephonic testimony only under special or exigent circumstances. *Bonamarte*, 263 Mont. at 177, 866 P.2d at 1136.

¶ With the significance of the right to confrontation and cross-examination in mind, we now turn to the issue of whether Bean's due process rights were violated when she was not afforded the opportunity to confront and cross-examine witnesses adverse to her claim. To decide this issue, we employ the traditional due process balancing test set forth in *Mathews v. Eldridge* (1976), 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18. The United States Supreme Court explained in *Mathews* that "[d]ue process is flexible and calls for such procedural protections as the particular situation demands." *Mathews*, 424 U.S. at 334, 96 S.Ct. at 902, 47 L.Ed.2d 18. Therefore, to determine what specific procedures are required to satisfy due process, three factors must be considered: 1) the individual's private interest affected by official government action; 2) the risk of erroneous deprivation of the interest; and 3) the government's interest in maintaining fiscal and administrative objectives. *Mathews*, 424 U.S. at 334-35, 96 S. Ct. at 903, 47 L.Ed.2d 18.

¶ First, Bean's appeal involves her claim for unemployment compensation benefits. Unemployment benefits replace income used by Bean for essential living expenses, and, therefore, are of the highest order. *See Mathews*, 424 U.S. at 340, 96 S.Ct. at 905,

47 L.Ed.2d 18. Additionally, Bean's private interest in her professional reputation as a licensed practical nurse is affected. Second, a risk exists that these private interests will be erroneously deprived if a referee considers hearsay reports of witnesses unavailable to testify, and, consequently, unavailable for confrontation or cross-examination. In contrast, simply to require that all adverse witnesses be present and subject to confrontation and cross-examination would ensure that Bean's due process rights were not violated.

¶ Case in point is Bean's current appeal. As set forth in Bean's Termination Report and confirmed by the testimony of Denend and Allen, the Incident Report at issue in this case provided the sole basis for Bean's termination. The Incident Report contained Rici's hearsay statement accusing Bean of making derogatory comments about Village Health and breaching the confidentiality of other residents. Even though Rici was the one witness who had knowledge of Bean's alleged misconduct, Village Health never subpoenaed her to testify, and, consequently, Bean was unable to confront or cross-examine her. Despite this, the referee admitted the Incident Report into evidence. As a result, Bean was denied her right to confrontation and cross-examination, and, therefore, was denied due process.

¶ Third, to require the presence of all adverse witnesses for live confrontation and cross-examination at this hearing would place no further economic burden on the State. Rather, the economic burden of producing witnesses adverse to Bean's claim would fall only on Village Health, who, as an employer contesting Bean's eligibility for unemployment benefits, bears the burden of proving Bean was discharged for willful misconduct. *See Parker*, 614 P.2d at 958. In this regard, we note that even the BOLA recognized the importance of providing unemployment compensation claimants with the opportunity to confront and cross-examine adverse witnesses when it ordered, on remand, that a *de novo* hearing be held with all parties and witnesses personally present and subject to confrontation and cross-examination. Yet, the BOLA ignored its own order when it adopted the decision of the referee denying Bean unemployment benefits based entirely on hearsay reports of witnesses who were unavailable to testify, and, consequently, were not subject to confrontation or cross-examination.

¶ Finally, we note that while Village Heath and the Department do not dispute that Bean was entitled to due process, they merely argue that, because Bean failed to subpoena witnesses adverse to her claim, she cannot now assert that she was denied

due process. In support of this argument, Village Health cites *Richardson v. Perales* (1971), 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842. In *Richardson*, a social security disability insurance claimant argued that reliance on the written reports prepared by his examining physicians, who did not testify at his eligibility hearing, violated his due process rights because he was not afforded the opportunity to confront and cross-examine them. The United States Supreme Court held that the claimant was not deprived of his right to confrontation and cross-examination in part because the claimant did not exercise his right to subpoena these physicians under 20 CFR § 404.926, and, thereby, provide himself with the opportunity for cross-examination. *Richardson*, 402 U.S. at 402, 91 S.Ct. at 1428, 28 L.Ed.2d 842.

¶ We agree with Bean that Village Health's argument under *Richardson*, in effect, attempts to improperly shift the burden of proof to Bean to disprove Village Health's allegations of her misconduct. The disability insurance claimant in *Richardson* bore the burden of proving his entitlement to social security disability benefits. Therefore, the Supreme Court held that the claimant's own failure to subpoena witnesses adverse to his claim did not deprive him of his due process rights. However, in the case at bar, Bean does not bear such a burden. Rather, as we previously held, because Village Health contests Bean's eligibility for unemployment benefits, it bears the burden of proving that Bean was discharged for willful misconduct. *Parker*, 614 P.2d at 958. Consequently, when the referee allowed Village Health to submit the hearsay statements of witnesses with personal knowledge of Bean's alleged work misconduct without requiring that these witnesses testify in person at Bean's eligibility hearing, Bean was denied her right to confront and cross-examine these witnesses. Accordingly, we hold that Bean's due process rights were violated.

¶ 3. May a decision denying a claim for unemployment compensation benefits, on the ground that a claimant committed "willful misconduct" during the course of her employment, be based entirely on inadmissible hearsay reports from witnesses unavailable for confrontation or cross-examination at the hearing?

¶ On the basis of our discussion in Issues 1 and 2, it is clear that the BOLA decision is not supported by substantial, admissible evidence. Rather, all of the evidence Village Health introduced to prove Bean's alleged misconduct was based on inadmissible hearsay reports. First, because the Incident Report was the sole reason given for Bean's termination, we explained that, under *Galbreath*, all other prior disciplinary reports concerning Bean's alleged misconduct introduced by Village Health were

**irrelevant and improperly admitted into evidence. Furthermore, the Incident Report itself was improperly admitted into evidence under Rule 803(6), M.R.Evid., the business records exception to the hearsay rule, because the report lacked any guarantees of trustworthiness. Moreover, Bean's due process rights were violated when she was denied her right to confront and cross-examine witnesses adverse to her unemployment compensation claim. Therefore, we again reverse and remand to the District Court for entry of an order remanding this case to the BOLA for a trial *de novo* to allow Bean the opportunity to confront and cross-examine all witnesses adverse to her claim and to afford an appeals referee the opportunity to observe the parties and witnesses in order for it to make a determination on the issue of Bean's eligibility for unemployment compensation benefits.**

**¶ Reversed and remanded for further proceedings consistent with this Opinion.**

/S/ JAMES C. NELSON

We Concur:

/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ TERRY N. TRIEWEILER

Justice Karla M. Gray, concurring in part and dissenting in part.

¶45 I concur in the Court's opinion on issues 2 and 3 and in the result the Court reaches in issue 1, namely that the Incident Report was inadmissible hearsay because it lacked sufficient guarantees of trustworthiness to render it admissible. I disagree with both the substance of the Court's discussion about whether the Incident Report is a business record and the necessity of beginning to split hairs about what is and what is not a business record for Rule 803(6), M.R.Evid., purposes.

¶ **Rule 803(6), M.R.Evid., provides that records, reports and the like which are made at or near the time of the events at issue are not excluded by the hearsay rule *if* they are kept in the course of a regularly conducted business activity and it was the regular practice of that business activity to make the record or report, *unless* "the source of information or the method or circumstances of preparation indicate lack of trustworthiness." This is the so-called "business records exception" to the hearsay rule. In my view, the Court's suggestion that the Incident Report is not a "business record" ignores the actual wording of the Rule and also ignores the reality that personnel records--including complaints about employees--are regularly kept and serve legitimate business purposes which have nothing to do with anticipated litigation. The Incident Report at issue clearly was kept in the course of a regularly conducted business activity and it was the regular practice of the business to make the report. No more need be said about that portion of Rule 803(6), M.R.Evid. Indeed, in my opinion, it is neither necessary nor wise to engage in the unproductive exercise of trying to determine how closely related a purported business record is to the main business activity of the enterprise in discussing and applying this Rule.**

¶ **Nor is it fair to suggest that, because this Report ultimately led to Bean's discharge, it was prepared in anticipation of litigation and, as a result, is not a "business record." Businesses operate through their employees. Moreover, a business like**

**Village Health, which is--in the Court's words--in the "routine business activity of administering nursing services to elderly residents," can hardly remain in business without competent and courteous employees who discharge the services in a manner acceptable to both the elderly residents and their visiting loved ones. A complaint about an employee, written up into an Incident Report, is an integral part of the business activity as it enables the business to better provide the services for which it is engaged by training and counseling its employees and, where necessary, disciplining them for conduct which does not measure up to expectations. I would conclude that the Incident Report is a business record as defined in Rule 803(6), M.R. Evid.**

**¶ Having done so, I would then conclude, as has the Court, that the Incident Report is not admissible because it lacks sufficient guarantees of trustworthiness. That is the appropriate focus of our inquiry here and a resolution of the issue before us under that portion of Rule 803(6), M.R.Evid., would avoid the confusion and distraction I fear the Court's analysis of the "business record" portion of the Rule will create in future cases.**

**¶ For these reasons, while I disagree with part of the Court's analysis of issue 1, I join in the result it reaches on that issue.**

/S/ KARLA M. GRAY