No. 98-368

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 336

WILLIAM MEEKS,

Petitioner/Respondent,

v.

STATE OF MONTANA, DEPARTMENT

OF NATURAL RESOURCES AND

CONSERVATION,

Respondent

and

GARY GOTTFRIED,

Respondent/Appellant

APPEAL FROM: District Court of the Twelfth Judicial District,

In and for the County of Chouteau,

The Honorable John A. Warner, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Danna R. Jackson, Marra, Wenz, Johnson & Hopkins, Great Falls, Montana

For Respondent:

Floyd D. Corder, Corder & Allen, Great Falls, Montana

Submitted on Briefs: November 24, 1998

Decided: December 30, 1998

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1. This is an appeal by Gary Gottfried (Gottfried), former lessee of the Department of Natural Resources and Conservation (DNRC), from a June 5, 1998 Order on Petition for Judicial Review and Judgment entered by the Twelfth Judicial District Court, Chouteau County. The District Court set aside DNRC's determination of value of Gottfried's improvements on the land subject to the lease and entered judgment for the sum of $8,101.22, in favor of Gottfried and against William Meeks (Meeks), the successor DNRC lessee. We affirm.

## Background

¶2. Gottfried formerly leased 640 acres of farm land in Chouteau County under DNRC Lease No. 2724. Gottfried's lease was canceled in January 1996, for delinquency in the 1995 crop share payment. Meeks became the prospective new lessee. Section 77-6-305, MCA, requires that before a lease is issued to the new lessee, the lessee (Meeks) must show that the former lessee (Gottfried) has been paid for the value of his improvements (absent the former lessee electing to remove the improvements).

¶3. Gottfried and Meeks were unable to agree on the value of the improvements. Accordingly, under § 77-6-306, MCA, a panel of arbitrators was chosen to ascertain and fix the value. The arbitrators valued the improvements at $2,168. Dissatisfied with this valuation, Gottfried appealed to DNRC under § 77-6-306(3), MCA. DNRC determined the value of the improvements to be $22,225.59. Meeks then sought judicial review of DNRC's decision under § 77-6-306(4), MCA.

¶4. In the District Court proceedings, DNRC moved for summary judgment. Gottfried moved for intervention and joined DNRC's motion. Following a hearing in November 1997, the District Court denied Gottfried's motion to intervene and DNRC's and Gottfried's motion for summary judgment.

¶5. The three employees who made DNRC's decision, Dave Mousel, Barny Smith and Craig Roberts, were then deposed and their depositions were filed with the court. Following the submission of legal memoranda by Meeks and Gottfried, but without

further hearing, the District Court entered its aforementioned decision. The court took into consideration the depositions of the three DNRC employees. This appeal followed.

## Issues

*¶6. We address two issues on appeal:*

¶7. 1. Did the District Court err in considering the depositions of the three DNRC employees in its judicial review of the administrative record?

¶8. 2. Did the District Court correctly determine that DNRC's valuation of Gottfried's improvements was clearly erroneous?

## Issue 1.

*Did the District Court err in considering the depositions of the three DNRC employees in its judicial review of the administrative record?*

¶9. We review the District Court's determination to receive and consider the depositions of the three DNRC employees as a question of law over which our review is plenary. *Bean v. Montana Bd. of Labor Appeals*, 1998 MT 222, ¶ 11, 965 P.2d 256, ¶ 11, 55 St.Rep. 927, ¶ 11 (citing *Steer, Inc. v. Department of Revenue* (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603). Either the court erred in doing so or it did not.

¶10. Gottfried argues that the District Court erred by reviewing, *de novo*, DNRC's valuation of his improvements rather than simply upholding the agency's exclusive review authority under § 77-6-306(3), MCA, and crediting the expertise of the agency in this matter. According to Gottfried, the court over-reached its authority on judicial review, first, by allowing Meeks to depose the three DNRC employees and permitting those depositions to become part of the record and, second, by failing to limit its scrutiny to determine whether a fair procedure was used, whether questions of law were properly decided, and whether the agency decision was supported by

substantial evidence. We do not agree.

¶11. We addressed precisely this same issue in *Evertz v. State Dept. of State Lands* (1991), 249 Mont. 193, 815 P.2d 135. In that case, Petitioner Ted Evertz leased approximately 1500 acres in Prairie County. Due to mismanagement of the property, Evertz's lease was canceled and transferred to another party. Pursuant to § 77-6-302, MCA, Evertz sought compensation for improvements to the land and, since the parties could not agree on a value, a panel of arbitrators was chosen to decide the value of the improvements. *Evertz*, 249 Mont. at 195, 815 P.2d at 137.

¶12. The arbitrators assigned a value of $2,800 to the improvements. Evertz, who valued the improvements at more than $53,000, appealed the decision to the Department of State Lands.[1] An employee for the Department reviewed the arbitrators' findings and prepared a 16 page document detailing the improvements claimed by Evertz. Relying on these findings, the Department affirmed the arbitrators' decision. *Evertz*, 249 Mont. at 195, 815 P.2d at 137.

¶13. Evertz petitioned the District Court for judicial review. He maintained that the record upon review should consist solely of his deposition and the deposition of the person who prepared the 16 page document for the Department. Evertz argued that the record offered by the Department was compiled without his input and that he was unable to cross-examine any of the people who had supplied the information. *Evertz*, 249 Mont. at 195-96, 815 P.2d at 137-38.

¶14. The District Court determined that all testimony and documentation created by the arbitrators and the Department in reaching their valuation should be included in the record. The court gave Evertz the opportunity to cross-examine any or all of the witnesses relied on and submit their deposition testimony, but Evertz chose not to do so. The court found that the decision of the arbitrators and the document prepared by the Department were more credible than Evertz's assertions. Thus, the court affirmed and directed that the successors in interest to Evertz pay him $2,800 as compensation for the improvements to the land. *Evertz*, 249 Mont. at 195-96, 815 P.2d at 137-38.

¶15. On appeal to this Court, Evertz contended that he was entitled to a trial *de novo* before the District Court and that the procedure followed at the agency level and upon judicial review denied him due process. We concluded that there is no

indication in § 77-6-306, MCA, that the judicial review contemplated by subsection (4) of that statute is to be a trial *de novo*. We stated, however, that the lower court is in a better position to understand how a decision was reached if it is able to review all of the material used to reach that decision. Thus, we held in *Evertz* that the District Court did not err in considering all the documentation regarding the leasehold. *Evertz*, 249 Mont. at 195-96, 815 P.2d at 137-38.

¶16. In that same fashion, in the case *sub judice*, Meeks did not demand, and the District Court did not allow, a trial *de novo*. Rather, the District Court simply allowed Meeks to depose the three DNRC employees, who made the decision for DNRC, to clarify how they arrived at their decision. Gottfried was free to present further evidence as well, but he chose not to do so.

¶17. Accordingly, we hold that the District Court did not err in allowing Meeks to depose the three DNRC employees or in permitting those depositions to become part of the record. Following our holding in *Evertz*, we conclude that a district court can and should allow additional evidence to be presented to clarify the administrative record and to ensure that the parties have been afforded due process.

## Issue 2.

*Did the District Court correctly determine that DNRC's valuation of Gottfried's improvements was clearly erroneous?*

¶18. In its June 5, 1998 Order on Petition for Judicial Review and Judgment, the District Court determined that DNRC's valuations of the improvements on the leased land totaling $22,225.59 were clearly erroneous, contrary to law, and arbitrary and capricious. Thus, the court set aside DNRC's valuations and determined that the appropriate valuations of the improvements on the leased land totaled $8,101.22.

¶19. Gottfried contends on appeal that the District Court erred in failing to uphold DNRC's valuations. He argues that there is substantial credible evidence within the administrative record to support the conclusion that the reasonable value of the improvements remaining in serviceable condition on the leased land is $22,225.59.

¶20. The improvements to the leased land at issue in this case are: (1) summer

fallowing; (2) fertilization of fallow ground; and (3) rock picking. We will discuss each in turn.

*Summer Fallowing*

¶21. Gottfried chemically fallowed 281.3 acres of the leased land in April 1995, and he mechanically fallowed the land twice thereafter. DNRC valued the chemical fallow at $2,365.22 and the two mechanical fallow treatments at $2,813. While the District Court agreed with the valuation for the chemical fallow, it concluded that the valuation for the mechanical fallowing was clearly erroneous.

¶22. All parties agree that summer fallowing is an improvement under 36.25.125, ARM. The dispute arises over whether the benefit Meeks received from the summer fallowing should be a determining factor.

¶23. The District Court concluded that Meeks only owed Gottfried $2,365.22 for the chemical fallowing since Meeks did not derive any benefit from the mechanical fallowing. Gottfried contends that the court has approached the valuation process incorrectly. He argues that the purpose of the improvements statute is so that former lessees can be compensated for the reasonable value of the improvements a lessee makes to a lease formerly held by him, not solely for the reasonable value "captured" by the new lessee.

¶24. Gottfried's lease was canceled in January 1996. DNRC did not issue Meeks a license for the land until June 12, 1996, too late to raise a crop for 1996. The DNRC employees who valued the improvements for DNRC admitted in their depositions that the mechanical fallowing done by Gottfried in 1995 had little value to Meeks in 1996 because Meeks had to mechanically fallow several times to eliminate the cheat grass and noxious weeds that had grown up in the spring of 1996.

¶25. Under § 77-6-303(1), MCA, the benefit Meeks received from the summer fallowing is a determining factor. This statute provides, in pertinent part:

In determining the value of these improvements, consideration shall be given to their original cost, *their present condition*, their suitableness for the uses ordinarily made of the lands on which they are located, and to the general state of cultivation of the land, its productive capacity as affected by former use, and *its condition with reference to the*

*infestation of noxious weeds.* [Emphasis added.]

**¶26. Accordingly, we hold that the District Court correctly concluded that since Meeks did not derive any benefit from the mechanical fallowing, that valuation was clearly erroneous.**

*Fertilization of Fallow Ground*

**¶27. DNRC tested soil samples from the 281.3 acres fertilized by Gottfried and determined that there were 81 pounds more nitrate per acre than the adjacent unfertilized soil. DNRC calculated the value of the fertilizer and the cost of its application to be $19.82 per acre. Hence, DNRC determined that Meeks owed Gottfried $5,575.37 for this improvement.**

**¶28. The District Court concluded that, under 36.25.125(6), ARM, fertilization is an improvement only when the ground is seeded. The fact that there were no seeded acres or growing crops on the land in question is not disputed, thus, the court concluded that DNRC's inclusion of the value of fertilization in its calculation of improvements was contrary to law.**

**¶29. According to the plain language of 36.25.125(6), ARM, the District Court was correct in concluding that fertilization is only an improvement when it is considered in connection with seeded acreage or growing crops:**

Summer fallowing, necessary cultivation done after the last crop grown, seeding and growing crops shall all be considered improvements. The value of *seeded acreage* and growing crops shall be limited to costs for seeding, seedbed preparation, *fertilization* and agricultural labor at the prevailing rate in the area. [Emphasis added.]

**¶30. Therefore, we hold that the District Court did not err in concluding that Meeks was not required to compensate Gottfried for fertilizing the leased land.**

*Rock Picking*

**¶31. Meeks argues that rock picking is routine maintenance and not an improvement. However, in a November 26, 1996 Memorandum setting forth recommendations for the valuation of the improvements, DNRC explained why rock picking is considered an improvement to the land:**

Presence of rock in a field accelerates wear on machinery, causes disruption of farming operations, and results in equipment breakdowns. Breakdowns and downtime resultant from rock picked up by a combine can be especially costly, with repairs for single occurrences sometimes exceeding several thousand dollars, and resulting in days of down time while parts are sought and repairs are made. Significant unharvested crop losses from wind, hail, and rain can occur during down times, resulting in substantial indirect costs. The presence of field rock in a field thereby decreases operational efficiency and increases operating costs above that for lands not so affected.

While the District Court agreed with DNRC that rock picking is a benefit which is transferred with the land, the court disagreed with the value placed upon that improvement by DNRC.

**¶32. In determining the value of rock picking, DNRC relied upon a Custom Rates Book compiled by the MSU Extension Service which provides a cost guideline for various farming practices. The listed rates for rock picking ranged from $3.74 to $50 per acre, with the statewide average being $15.25 per acre. The rates in this publication were last updated in 1990, thus DNRC adjusted the rates upward 15 to 20 percent to reflect inflation. This resulted in a range of $17.53 to $18.30 per acre. Hence, DNRC determined that Gottfried's claimed rate of $20 per acre was appropriate and DNRC set the value of the rock picking on the 573.6 farmed acres at that rate.**

**¶33. We agree with the District Court's conclusion that the $20 per acre rate for rock picking established by DNRC was arbitrary and capricious as it had nothing to do with the actual cost of the rock picking. As Meeks points out, while the Custom Rates Book established that the statewide average for rock picking is $15.25 per acre, the average rate for the area that includes the leased land is $7.50 per acre.**

**¶34. Accordingly, we hold that the District Court did not err in concluding that the appropriate valuation for rock picking was $10 per acre.**

**¶35. Affirmed.**

/S/ JAMES C. NELSON

We Concur:

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER

/S/ W. WILLIAM LEAPHART

/S/ KARLA M. GRAY

1. [1] Effective July 1, 1995, the Department of State Lands was disbanded and its functions were transferred to the newly established Department of Environmental Quality and the existing Department of Natural Resources and Conservation.