JUSTICE WARNER
dissents.
¶52 I respectfully dissent. The case was fairly tried in the District Court and the judgment should be affirmed. The District Court’s evidentiary rulings were well considered and well within its discretion.
¶53 The underlying medical negligence case is not nearly as simple as the Court describes it. Petersons’ claims arose out of a later-in-life pregnancy involving a constellation of dangerous complications. The result, the death of the twins Mrs. Peterson was carrying, was sad, even tragic. However, notwithstanding the Court’s one-sided statement of the facts, the record shows that TDC has a viable argument that the underlying claims might have been successfully defended.
¶54 As noted by the Court at ¶ 32, the Petersons offered into evidence in this MUTPA action demand letters and a settlement brochure prepared by their counsel and sent to counsel for TDC. The Court states that the relevance of these documents was to prove that plaintiffs did indeed want to settle, that TDC possessed plaintiffs’ theory of the case, that plaintiffs made a demand for money, and that liability was reasonably clear.
¶55 There was no contest during the trial that the Petersons made offers to settle, and that they made a demand for money damages. The facts concerning offers that were made, when, and for what amounts, were in evidence. The jury duly considered the course of the settlement negotiations in the underlying case.
¶56 Petersons suffered no unfair prejudice by the exclusion of these documents. There was no contest that they were received. The testimony of the TDC vice-president of claims, quoted by the Court at ¶ 28, is taken out of context. His testimony was to the effect that he could not recall that TDC received plaintiffs’ medical bills, and it was plaintiffs’ obligation to provide this information. The letters and *371 settlement brochure were not necessary to prove whether TDC received plaintiffs’ medical bills.
¶57 The closing argument of TDC’s counsel, quoted by the Court at ¶ 28, was a comment on the evidence in the case. That argument acknowledged that offers to settle were made, and rejected, by both sides. And, because the evidence included the particulars of each offer, there was nothing of substance hidden from the jury by the District Court’s order excluding the letters written by plaintiffs’ counsel and the settlement brochure, which naturally tout Petersons’ version of the underlying case.
¶58 The letters and brochure this Court now orders into evidence are testimonial evidence. They were indeed received by TDC, but they most certainly do not intrinsically speak for themselves-they speak for Petersons and their lawyer. They are, understandably, rife with hyperbole advanced in support of Petersons’ cause. The real purpose of offering these documents into evidence, which the District Court recognized and this Court misses entirely, was to allow Petersons’ counsel to testify as to his opinion that the underlying case was a sure winner, and that the damage award would be large. The effect of admitting them into evidence is to allow a plaintiffs lawyer to testify as an expert, without subjecting himself to cross-examination. And, of course, the very reason for the hearsay rule is to exclude evidence that is not subject to cross-examination. State v. Mizenko, 2006 MT 11, ¶ 170, 330 Mont. 299, ¶ 170, 127 P.3d 458, ¶ 170; see Bean v. Montana Bd. of Labor Appeals, 1998 MT 222, ¶ 34, 290 Mont. 496, ¶ 34, 965 P.2d 256, ¶ 34.
¶59 The question tried to the jury was whether TDC acted in bad faith in its dealings with Petersons as defined by MUPTA. The letters from their counsel and the settlement brochure are only tangentially related to this question. However, as this mostly irrelevant and cumulative evidence is now ordered to be admitted into evidence on re-trial, TDC must be allowed to include in its defense its in-house evaluation of plaintiffs’ counsel, as recognized by the Court at ¶ 50. TDC is entitled to defend its decision in the underlying case that liability was not reasonably clear. Since Petersons’ lawyer’s opinion on this issue will be admitted into evidence on re-trial, TDC must be allowed to present evidence on why it questioned this opinion. TDC’s past relationship with Petersons’ counsel has now become highly relevant.
¶60 The demand letters contain numerous statements of fact that are disputable. Both the demand letters and the settlement brochure are literally filled with the opinions of Petersons’ counsel. If their lawyer *372 is to be allowed to testify as to facts and to give his opinion as an expert, via documents he prepared, his files must now be discoverable to examine the basis of such opinions, as well as to find out if the information contained in these files leads to admissible evidence which could aid the defense. This is not only required by M. R. Evid. 705, it is necessary if TDC is to be “free to dispute the truthfulness of the statements made within the documents” and “free to attempt to dismiss them as inaccurate, inadequate or inconsequential” as stated by the Court at ¶ 34. And, TDC might wish to call Petersons’ lawyer as a witness concerning the purpose, content, and veracity of the demand letters and settlement brochure. This could easily raise problems with present counsel's continuing representation under Rule of Professional Conduct 3.7, which prohibits a lawyer from acting as an advocate at a trial in which he is likely to be a necessary witness, except under certain circumstances.
¶61 As noted by the Court at ¶ 31, a district court has broad discretion to determine the admissibility of evidence, and this Court reviews a district court’s evidentiary rulings for an abuse of discretion. To reverse a district court’s evidentiary ruling for abuse of discretion, this Court must determine that the district court either “‘act[ed] arbitrarily without employment of conscientious judgment or exceed[ed] the bounds of reason[,] resulting in substantial injustice.’” Riggs, ¶ 18; Kiely Constr., L.L.C. v. City of Red Lodge, 2002 MT 241, ¶ 92, 312 Mont. 52, ¶ 92, 57 P.3d 836, ¶ 92 (quoting Jarvenpaa v. Glacier Elec. Co-op., Inc., 1998 MT 306, ¶ 13, 292 Mont. 118, ¶ 13, 970 P.2d 84, ¶ 13). The letters and settlement brochure are literally full of hearsay and properly excluded under M. R. Evid. 802.
¶62 The experienced trial judge not only recognized the true purpose of the letters and settlement brochure, his ruling excluding them caused no prejudice to plaintiffs as no material facts were kept from the jury. It was the exclusion of the letters and settlement brochure which made discovery and introduction into evidence of Petersons’ counsel’s file unnecessary. As they will be admitted into evidence on re-trial, all of the underlying facts or data which forms the basis of these opinions become relevant and also discoverable. M. R. Evid. 705.
¶63 In my view, the evidentiary rulings of the trial judge were made in the exercise of sound judgment and they did not exceed the bounds of reason resulting in substantial injustice. I would affirm the judgment and dissent from the Court’s decision to remand this case for another trial.